UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 21-194 JGB (SPx) | Date | June 17, 2021 |
| Title | *C.B. v. Moreno Valley Unified School District, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING IN PART and DENYING IN PART Defendants' Motions to Dismiss (Dkt. Nos. 68, 69, and 70); and (2) VACATING the June 21, 2021 Hearing (IN CHAMBERS)

Before the Court are three motions to dismiss filed by: (1) County of Riverside, Riverside County Sheriff's Department, Chad Bianco, and Norma Loza (collectively, "County Defendants") ("County MTD," Dkt. No. 68); (2) Manuel Arellano, Darryl Scott, Scott Walker, and Demetrius Owens (collectively, "Individual Defendants") ("Arellano MTD," Dkt. No. 69); and (3) Moreno Valley Unified School District and Martinrex Kedziora (collectively, "District Defendants") ("District MTD," Dkt. No. 70). The Court determines these matters are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motions, the Court GRANTS the District MTD, DENIES the Arellano MTD, and GRANTS IN PART and DENIES IN PART the County MTD. The June 21, 2021 hearing is VACATED.

## I. BACKGROUND

On February 2, 2021, Plaintiff C.B., by and through his guardians ad litem W.B. and B.T., filed a complaint against Defendants Moreno Valley Unified School District ("District"), District Superintendent Martinrex Kedziora ("Kedziora" or "Superintendent"), District Director of Safety and Security Darryl Scott, Former Principal Scott Walker, Campus Security Officers Manuel Arellano and Demetrius Owens, County of Riverside ("County"), Riverside County Sheriff's Department ("Sheriff's Department"), County Sheriff Chad Bianco ("Bianco" or "Sheriff"), Deputy Sheriff Norma Loza, and Does 1-10. ("Complaint," Dkt. No. 1.)

The Complaint alleges twelve causes of action: (1) unreasonable seizure and excessive force in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Scott, Walker, Loza, Owens, Arellano, and Does 1-10; (2) Monell liability under 42 U.S.C. § 1983 against the County and Sheriff's Department; (3) violations of Title II of the ADA, 42 U.S.C. § 12132 against the District, Superintendent, County, Sheriff's Department, and Sheriff; (4) violation of Section 504, 29 U.S.C. § 794, et seq. against the District, Superintendent, County, Sheriff's Department, and Sheriff; (5) violation of Cal. Gov't Code § 11135, et seq. against the District, Superintendent, County, Sheriff's Department, and Sheriff; (6) violation of Cal. Civ. Code § 51, et seq. against the District and Superintendent; (7) violation of Article I, § 7(A) and Article IV, § 16(A) of the California Constitution against the District and Superintendent; (8) intentional infliction of emotional distress against all Defendants; (9) false imprisonment against all Defendants; (10) battery against all Defendants; (11) assault against all Defendants; and (12) negligent supervision against the District, Superintendent, Scott, and Walker.

County Defendants filed the County MTD on April 12, 2021. Plaintiff filed his opposition on April 19, 2021. ("County Opposition," Dkt. No. 71.) County Defendants replied on April 26, 2021. ("County Reply," Dkt. No. 73.)

Individual Defendants filed the Arellano MTD on April 19, 2021. Plaintiff filed his opposition on May 3, 2021. ("Arellano Opposition," Dkt. No. 75.) Individual Defendants replied on May 10, 2021. ("Arellano Reply," Dkt. No. 78.)

District Defendants filed the District MTD on April 19, 2021. Plaintiff filed a notice of non-opposition to the District MTD on April 30, 2021. ("District Non-Opposition," Dkt. No. 74.) District Defendants filed a reply to the District Non-Opposition on May 10, 2021. ("District Reply," Dkt. No. 79.)

## II.   FACTUAL ALLEGATIONS

The following allegations are accepted as true for the purposes of these Fed. R. Civ. P. 12(b)(6) Motions.

C.B. is a Black, twelve-year-old student with disabilities. (Compl. ¶¶ 1, 13.) C.B. attended Landmark Middle School ("Landmark") and Mountain View Middle School ("Mountain View"), both located within the District. (Id. ¶ 16.) At the time of the incidents at issue, C.B. was between ten and eleven years old, approximately seventy pounds, and in the sixth grade. (Id. ¶ 13.) C.B. has diagnoses of Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"), but his parents suspect that he may have additional undiagnosed emotional and behavioral issues. (Id. ¶ 14.) C.B. received special education services during the relevant period. (Id.)

This action concerns four incidents where C.B. was handcuffed by Campus Security Officers ("CSOs") and School Resource Officers ("SROs") over the course of four months.

## A. August 21, 2019 Incident

School police officers first handcuffed C.B. on August 21, 2019, while he was a student at Landmark School. (Id. ¶ 73.) Assistant Principal Pedro Gutierrez called C.B.'s mother, B.T., to ask her to pick him up from school because he was "acting up." (Id. ¶ 74.) When she arrived, Gutierrez informed her that school police officers had handcuffed C.B., but the handcuffs were removed before she arrived. (Id. ¶ 75.) Gutierrez told B.T. that he instructed officers to remove the handcuffs because he believed that handcuffing C.B. was "totally unacceptable," or words to that effect. (Id.) The District did not document the mechanical restraint in an Incident Report. (Id. ¶ 76.)

## B. August 26, 2019 Incident

On August 26, 219, District CSOs handcuffed and leg-cuffed C.B. at Landmark School. (Id. ¶ 78.) Gutierrez directed Defendant CSO Owens to bring C.B. to the office for a meeting, spurred by C.B.'s alleged class disruption by cursing and ripping paper. (Id. ¶ 79.) CSOs Owens and King and Assistant Principal Kamilah O'Connor found C.B. on the playground and directed him to go to the office. (Id. ¶ 80.) C.B. refused and allegedly clenched his fists and began breathing heavily. (Id.) CSOs Owens and King dragged C.B. by his arms to a seclusion room. (Id.)

Principal Scott Walker joined CSOs Owens and King in the seclusion room, surrounding C.B. (Id. ¶ 81.) C.B. began pulling away, pushing, and swinging with his arms to try to free himself from the room. (Id.) Principal Walker directed CSOs King and Owens to handcuff C.B., who was four feet, eight inches tall and approximately seventy pounds. (Id. ¶ 82.) The CSOs placed C.B. in a physical hold, tackled him, and forced him into metal cuffs. (Id.) The CSOs then pulled C.B. up from the ground and attempted to sit him in a chair. (Id.) C.B. became more upset and began flailing his legs. (Id.)

Principal Walker then directed the CSOs to place separate handcuffs on C.B.'s ankles. (Id. ¶ 83.) The CSOs did so, and C.B. remained with his hands and ankles shackled for an unknown period of time. (Id.)

The District suspended C.B. from school that day. (Id. ¶ 84.) When his aunt went to pick him up, she found him sitting in a fetal position against the wall of the seclusion room, without a shirt, and with a desk blocking the door. (Id.) The District did not provide an Incident Report to C.B.'s parents. (Id.)

//
//

### C. October 8, 2019 Incident

On October 7, 2019, C.B. allegedly threw a rock in the general direction of CSO Manuel Arellano. (Id. ¶ 89.) The District did not inform C.B.'s parents about the incident on that day, but it requested that Deputy Norma Loza intervene and investigate the alleged incident. (Id.)

On October 8, 2019, Deputy Loza and CSO Arellano went to C.B.'s special education classroom to investigate the alleged incident from the day before. (Id. ¶ 90.) Loza's body camera partially captured this interaction. (Id. ¶ 91; Ex. 2 (Body camera footage).) Immediately upon entering the classroom, Loza directed the teacher to remove other students from the classroom. (Id. ¶ 92.) C.B. sat motionless at his desk with his head down. (Id.) Loza told C.B., "You're going to go to the office, no matter what. Either you go, cooperating, or I'm going to take you to the office." (Id. ¶ 93.) Neither Loza nor Arellano explained why they were asking C.B. to go to the office. (Id.) C.B. kept his head down and replied that he was not going. (Id.)

After less than ninety seconds, Loza grabbed C.B.'s sweatshirt, pulled him out of his seat, and passed him over to Arellano. (Id. ¶ 94.) Arellano twisted C.B.'s wrists behind his back to try to place handcuffs on him, while Loza repeated, "You are going to the office." (Id.) C.B. swore and stated that he was not going. (Id.) Loza and Arellano then tackled C.B., pinned him to the ground, and pressed him face down into the floor. (Id.) Arellano then dug his knee into C.B.'s back, while Loza placed him in handcuffs. (Id.) Loza also stated that if C.B. moved, the handcuffs were "going to get tight on [him]." (Id. ¶ 95.) Loza and Arellano then pulled C.B. to his feet and pushed him towards the classroom door, while he squirmed and cried to be let go. (Id. ¶ 96.) The officers then forced C.B. down onto the floor. (Id.) A second CSO arrived, and the officers surrounded and held C.B. face-down on the floor for almost two minutes. (Id. ¶ 97.) C.B. was then pulled up to a seated position, with Arellano pressing down on his shoulders, and the second CSO twisting his leg. (Id.) C.B. cried, "Let me go! Let me go!" The CSOs repeated, "If you calm down, we calm down." (Id. ¶ 98.)

C.B. remained restrained for at least two more minutes. (Id. ¶¶ 98-100.) Loza and her partner, Deputy Toscano, later placed C.B. in the back of a police car. (Id. ¶ 101.) While locked in the back seat, C.B. reportedly stated, "I wish I was dead." (Id.) C.B. remained in the back of the police car for nearly an hour before the ambulance arrived, during which time students passing by saw him. (Id.) An ambulance took C.B. to Riverside's Emergency Treatment Service ("ETS") facility for a 5585 evaluation, and he was discharged that afternoon. (Id. ¶ 103.)

After the incident, C.B.'s parents were afraid for his safety and did not want him to return to the same school. (Id. ¶ 109.) After staying at home for approximately five weeks, C.B. transferred to Mountain View. (Id. ¶ 110.)

### D. December 9, 2019 Incident

Shortly after starting at Mountain View, on December 9, 2019, Deputy Loza handcuffed C.B. again. (Id. ¶ 111.) C.B. allegedly pulled a classmate's chair out from under him, the classmate shoved C.B., and they then pushed each other. (Id.) After C.B.'s teacher intervened

to break it up, C.B. pushed his teacher and began to throw classroom items. (Id.) The teacher cleared the room and called for CSOs and SROs. (Id. ¶ 112.)

CSOs Juan Ramirez and Kristopher Woodside arrived first and, almost immediately, physically restrained C.B. on the ground. (Id.) Deputy Loza arrived about fifteen minutes later, while CSOs Ramirez and Woodside were still physically restraining C.B. (Id. ¶ 113.) Deputy Loza then handcuffed C.B. and transported him to the Moreno Valley Police Station. (Id. ¶ 114.) There, Loza referred C.B. to the ETS Center for a 5585 evaluation and requested an ambulance transport. (Id.) C.B.'s mother arrived before the ambulance and asked to take her son home, but Loza refused. (Id.) As an ambulance transported C.B. to the ETS Center, he was restrained to the gurney during the ride. (Id. ¶ 115.) He was discharged and reunited with his mother hours later. (Id.)

The District later initiated expulsion proceedings against C.B. based on the incident with his classmate at Mountain View. (Id. ¶ 116.) On December 20, 2019, the Individualized Education Program ("IEP") team met for a Manifestation Determination Review. (Id.) The IEP team determined that C.B.'s behaviors were caused by his disabilities (including ADHD and ODD), and nullified the pending expulsion charges. (Id.)

### III.  LEGAL STANDARD

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Id.; see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). In considering a Rule 12(b)(6) motion to dismiss, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

### A. County Defendants

County Defendants move to dismiss Plaintiff's claims,[1] arguing that (1) the Sheriff's Department and Sheriff are redundant defendants; (2) Deputy Loza is entitled to qualified and discretionary act immunity; (3) the municipal entities are also entitled to immunity; and (4) the claims fail on the merits. For the reasons established below, the Court agrees in part and disagrees in part.

#### 1. Redundant Defendants

County Defendants first seek to dismiss Plaintiff's claims against the Sheriff's Department and Sheriff Bianco in his official capacity, arguing that they are redundant defendants. (County MTD at 3.) Plaintiff counters that the County and the Sheriff's Department are separate suable entities under Section 1983. (County Opp'n at 2-3.) The Court agrees. "[I]f both a county and a county sheriff's department are amenable to suit, they may both be named in a single action." Hurth v. Cty. of Los Angeles, 2009 WL 10696491, at *5 (C.D. Cal. Oct. 28, 2009) (citing Streit v. Cty. of Los Angeles, 236 F.3d 552 (9th Cir. 2001)). Indeed, "there simply is no rule of law requiring a court to dismiss a municipal entity as duplicative, redundant, or unnecessary defendant in cases where the municipality itself is named." Id. The Court therefore DENIES County Defendants' Motion as to the Sheriff's Department.

As to Sheriff Bianco, Plaintiff argues that he is also a proper defendant, as he is a "classic Ex Parte Young defendant" against whom C.B. can obtain injunctive relief. (County Opp'n at 3 (citing Hurth, 2009 WL 10696941, at *4).) The Ninth Circuit has held that "[w]hen a municipal officer and a local government entity are named, and the officer is named only in an official

---

[1] Plaintiff asserts Claims 1 (unreasonable seizure and excessive force), 2 (Monell liability), 3 (ADA violations), 4 (Rehabilitation Act violations), 5 (race and disability discrimination), 8 (intentional infliction of emotional distress), 9 (false imprisonment), 10 (battery), and 11 (assault) against Deputy Loza, the County, the Sheriff's Department, and/or the Sheriff.

capacity, the court may dismiss the officer as a redundant defendant." Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008). That is because "[a]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Sheriff Bianco is only sued in his official capacity, and the governmental entities (the County and the Sheriff's Department) are both represented in this suit. While the Court recognizes that striking or dismissal of redundant defendants is not mandatory, to avoid confusion and superfluity, the Court GRANTS County Defendants' Motion as to Defendant Bianco.

2. **Immunity**

County Defendants next argue that they are entitled to discretionary act immunity and qualified immunity. For the reasons described below, the Court disagrees.

a. **Discretionary Act Immunity**

County Defendants argue that Deputy Loza is immune from liability for the discretionary acts related to detaining C.B. and referring him for a mental health evaluation under Cal. Welf. & Inst. Code ("Cal. WIC") Section 5585.

A public employee can be held liable for an injury caused by their act or omission "to the same extent as a private person." Cal. Gov't Code § 820. When that public employee's act or omission occurs in the scope of their employment, the public entity that employs them can be held vicariously liable for the injury. Id. at § 815.2. However, "a public employee is not liable for an injury resulting from [their] act or omission where the act or omission was the result of the exercise of the discretion vested in [them], whether or not such discretion be abused." Id. at § 820.2. Moreover, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Id. at § 815.2(b).

In addition, Cal. WIC Section 5278 provides that individuals authorized "to detain a person for 72-hour treatment and evaluation … shall not be held either criminally or civilly liable for exercising this authority in accordance with the law." This immunity may extend to assault and battery, false arrest, illegal imprisonment, intentional infliction of emotional distress, and racial discrimination claims under California law. Bias v. Moynihan, 508 F.3d 1212, 1221 (9th Cir. 2007). Accordingly, if Deputy Loza is entitled to immunity, the County and the Sheriff's Department argue they are also entitled to immunity under Cal. Gov't Code Section 820.2. (County MTD at 15-16.)

However, discretionary act immunity is construed "as narrowly as possible," and "government defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who 'consciously balanc[ed] risks and advantages…" A.E. ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 639-40 (9th Cir. 2012). County Defendants fail to meet this burden. Moreover, Section 820.2 "does not shield from liability government employees who use excessive force in carrying out their duties." Rodriguez

v. Cty. of Los Angeles, 891 F.3d 776, 799 (9th Cir. 2018); see also Blankenhorn v. City of Orange, 485 F.3d 463, 487 (9th Cir. 2007) ("[I]t has long been established that this provision does not apply to officers who use unreasonable force in making an arrest."). Nor can County Defendants claim immunity from Plaintiff's false imprisonment claims, Robinson v. Solano Cty., 278 F.3d 1007, 1016 (9th Cir. 2002) ("Public employees are similarly not entitled to immunity in suits for false arrest or false imprisonment."); Cal. Gov't Code § 820.4 ("[N]othing in this section exonerates a public employee from liability for … false imprisonment."), or for discrimination against Plaintiff, C.N. v. Wolf, 410 F. Supp. 2d 894, 902 (C.D. Cal. 2005). The Court therefore rejects County Defendants' assertion of discretionary act immunity as to Plaintiff's false imprisonment, discrimination, and excessive force claims, as well as to the "remaining state law claims aris[ing] from the alleged use of force during [C.B.'s detention]." Blankenhorn, 485 F.3d at 487.

Deputy Loza's immunity claim under Cal. WIC Section 5278 also fails. "The scope of § 5278 immunity … is not as all-encompassing as the defendants argue." Sheehan v. City & Cty. of San Francisco, 743 F.3d 1211, 1233 (9th Cir. 2014), rev'd in part, cert. dismissed in part sub nom. City & Cty. of San Francisco v. Sheehan, 575 U.S. 600, 135 S. Ct. 1765 (2015). Rather, it only "extends to claims based on circumstances that are inherent in an involuntary detention…." Id. (quoting Jacobs v. Grossmont Hospital, 108 Cal. App. 4th 69 (2003)) (emphasis in original). It only applies where "authority for such detention is exercised in accordance with the law." Farmer v. Cty. of Calaveras, 2018 WL 1919900, at *5 (E.D. Cal. Apr. 24, 2018) (emphasis in original). Thus, Section 5278 "does not immunize the officers if they were negligent in executing the detention[,]" for example. Sheehan, 743 F.3d at 1234.

Plaintiff's claims against Deputy Loza concern allegedly unlawful force, which is certainly not an "inherent attribute" of a psychiatric hold. As Plaintiff points out, Loza's allegedly tortious acts began well before she initiated the involuntary holds, and her interventions with C.B. were spurred by investigations for alleged discipline infractions. (County Opp'n at 14; Compl. ¶¶ 94-103, 113-115.) Plaintiff alleges that Loza used unlawful force shortly after intervening with C.B., and that as a result of Loza's actions, he experienced worsening trauma. (See Compl. ¶ 101.) Taking Plaintiff's allegations to be true and construing reasonable inferences in his favor, as the Court must do at this stage, the Court finds that Section 5278 immunity does not apply here.

Because the Court finds that Deputy Loza is not entitled to discretionary act immunity, the public entity that employs her can be held vicariously liable for Plaintiff's alleged injuries. Cal. Gov. Code § 815.2. The Court therefore DENIES County Defendants' Motion as to the discretionary act immunity.

### b. Qualified Immunity

County Defendants next argue that Loza is entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). An officer will be denied qualified immunity if (1) taking the alleged facts in the light most favorable to the party asserting injury, the officer committed a constitutional violation, and (2) the officer's specific conduct violated "clearly established" federal law at the time of the alleged misconduct such that a reasonable officer would have understood the conduct to be unlawful. Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 201–02 (2001)).

First, as detailed in section A.3. below, the allegations in the Complaint sufficiently state a claim that Deputy Loza's use of force was excessive and unreasonable in violation of Plaintiff's Fourth Amendment rights. Second, the Ninth Circuit has recognized as "clearly established" law that "police use of force in response to school-related incidents ha[s] to be reasonable in light of the circumstances and not excessively intrusive[,]" and that "police use of force must be carefully calibrated to respond to the particulars of a case, including the wrongdoing at issue, the safety threat posed by the suspect, and the risk of flight." C.B. v. City of Sonora, 769 F.3d 1005, 1030 (9th Cir. 2014). Thus, in C.B. v. Sonora, the Ninth Circuit held that applying handcuffs to an eleven-year-old student and keeping him in handcuffs for approximately thirty minutes was an "obvious violation" of these clearly established standards. Id. Accepting Plaintiff's factually similar allegations as true, the Court finds that Deputy Loza's actions were also an "obvious violation" of clearly established standards. Thus, Deputy Loza is not entitled to qualified immunity. The Court DENIES County Defendants' Motion as to qualified immunity.

Having found that none of the County Defendants are entitled to immunity from liability, the Court considers the sufficiency of the allegations against County Defendants.

### 3. Unreasonable Seizure and Excessive Force (Claim One)

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures by law enforcement officials. U.S. Const. amend. IV. The Fourth Amendment requires the degree of force to be "objectively reasonable" under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989). Courts apply an objective inquiry to determine whether excessive force was used. The "reasonableness" of an officer's particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. This test considers the "totality of the circumstances," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

#### a. October 8, 2019 Event

Plaintiff alleges that on October 8, 2019, Deputy Loza used excessive force and imposed unreasonable seizures on Plaintiff C.B. The Complaint alleges that while investigating an alleged rock throwing incident at C.B.'s school, Deputy Loza pulled C.B. out of his seat, tackled and pinned him to the ground, handcuffed him, threatened to tighten the handcuffs, and left him

handcuffed in the back of a police car for an extended period of time, among other actions. (Compl. ¶¶ 92-97, 100-01.)

County Defendants argue that these allegations are disputed by the body camera footage, attached to the Complaint as Exhibit 2. (County MTD at 6.) County Defendants seek to incorporate by reference additional events and context depicted in the video. (Id. at 5-6.) Under the incorporation by reference doctrine, a court may consider material "properly submitted as part of the complaint[.]" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). The doctrine is meant to prevent plaintiffs "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). Defendants may incorporate a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. (quoting United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003)). However, "what inferences a court may draw from an incorporated document should also be approached with caution[,]" as "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts in a well-pleaded complaint." Id. at 1003. The Court agrees that the video exhibit may be incorporated by reference. Nonetheless, after reviewing Exhibit 2, the Court finds that it does not contradict Plaintiff's allegations, nor does it doom his claims. While County Defendants may dispute Plaintiff's characterization of Deputy Loza's actions as unreasonable, the video is consistent with the allegations in the Complaint. Rather than accepting County Defendants' interpretation of portions of the video incorporated by reference to dispute the facts in the Complaint, the Court must take Plaintiff's allegations as true and construe all reasonable inferences in Plaintiff's favor.

County Defendants also argue that Deputy Loza's detention and use of force were reasonable, as Plaintiff was resisting and fighting throughout the interaction, and Loza was called out to respond to an assault (throwing a rock at CSO Arellano). (Id.) The Court disagrees. Applying the Graham totality of the circumstances standard, Plaintiff sufficiently alleges that Deputy Loza's actions were unreasonable and excessive. First, as Plaintiff points out, there was no crime, much less a severe crime. While Defendant refers to the alleged rock throwing incident as assault, California law prohibits the prosecution of children under twelve for assault. See Cal. Welf. & Inst. Code § 602. Thus, C.B., who was under twelve at the time of the incident, could not have been charged with assault. Even if that were not the case, Deputy Loza allowed one day to elapse between the alleged rock throwing and her intervention with C.B., which weighs heavily against the severity of the "crime." (Opp'n at 5.) Second, Plaintiff was not an immediate safety threat to officers or others' safety, as the officers were investigating a day-old incident, and at the time of their intervention, Plaintiff was sitting motionless at his desk with his face down. (Compl. ¶ 92.)

In addition, Plaintiff's age, stature, and disability all weigh against the officer's reasonableness. At the time of the event, C.B. was between ten and eleven years old, weighed approximately seventy pounds, and had several documented disabilities. (Compl. ¶ 13.) He was surrounded by at least two adults at all times, and there is nothing to suggest that he posed a safety threat to warrant being forcibly removed from his seat, pinned to the floor, and handcuffed.

See C.B. v. City of Sonora, 769 F.3d at 1030 (finding that officers' decision to handcuff and detain an eighty-pound eleven-year-old was unreasonable). Even if Plaintiff were unresponsive and behaving disrespectfully, "[a]n arrest meant only to 'teach a lesson' and arbitrarily punish perceived disrespect is clearly unreasonable." Scott v. Cty. of San Bernardino, 903 F.3d 943, 950 (9th Cir. 2018) (concluding that handcuffing middle school students and transporting them to a police station was unreasonable where there were generalized allegations of fighting and conflict and they were perceived to be non-responsive to officer's questioning). Nor does any resistance by C.B. defeat his claims, as even in the face of verbal and physical aggression, "the type and amount of force inflicted" may be excessive. Hayenga ex rel. Hayenga v. Nampa Sch. Dist. No. 131, 123 F. App'x 783, 786 (9th Cir. 2005).

### b. December 9, 2019 Event

Plaintiff alleges that on December 9, 2019, Deputy Loza again used excessive force and unreasonably seized Plaintiff when she handcuffed him after he had a disagreement with a classmate, allegedly pushed his teacher, and threw classroom items. (Compl. ¶ 111.) Deputy Loza handcuffed C.B. as he was physically restrained by CSOs Ramirez and Woodside and transported him to the police station. (Id. 113.) Deputy Loza referred him to the ETS Center for a 5585 evaluation, requested an ambulance transport, and refused his mother's request to take her son home. (Id.)

County Defendants argue that Deputy Loza's actions were reasonable, as there was reasonable suspicion to detain and probable cause to arrest Plaintiff for assault and battery on another student and his teacher. Applying the Graham standard discussed above, Plaintiff's allegations support a claim that, under the totality of the circumstances, Deputy Loza's actions on December 9, 2019 were also excessive and unreasonable. In particular, as discussed above, California law prohibits prosecution of children under twelve for assault and battery. See Cal. Welf. & Inst. Code § 602. Further, there is no indication that Plaintiff was a safety threat to warrant being immediately handcuffed and transferred to the police station. See C.B., 769 F.3d at 1030; Scott, 903 F.3d at 950; Hayenga ex rel. Hayenga, 123 F. App'x at 786.

Taking Plaintiff's allegations to be true and construing all inferences in his favor, the Court concludes that Plaintiff sufficiently states a claim for excessive force and unreasonable seizure. The Court DENIES County Defendants' Motion as to Claim One.

### 4. Monell Liability (Claim 2)

Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), a municipality cannot be sued under a theory of respondeat superior for injuries inflicted by its employees or agents. Rather, municipalities are subject to damages under 42 U.S.C. § 1983 if the plaintiff proves: (1) that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom; (2) that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy; or (3) that an official with

final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992)); Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008).

### a. Express Policy

First, Plaintiff may state a claim for Section 1983 liability based on a formal municipal policy. Trevino, 99 F.3d at 918. Plaintiff points to specific Department policies that led to his alleged injury. (Opp'n at 15.) Sheriff's Department Policy SRU-003 authorizes SROs to "counsel" students who are "about to engage" in criminal conduct, to search students with "reasonable suspicion" that the student has violated a school rule, and to "stop, question, interview, and take police action without the prior authorization of the principal." (Compl. ¶ 125.) Policy SRU-004 authorizes SROs to stop, question, detain, and cite students simply for being out of class during school hours. (Id. ¶ 125.) Moreover, the Sheriff's Department Standards Manual does not require or encourage officers to use crisis communication or other non-violent alternatives to restraint. (Id. ¶¶ 66-68.) Accordingly, Plaintiff alleges that Deputy Loza went to Plaintiff's class to investigate a minor incident that occurred a day earlier, and within minutes handcuffed and detained Plaintiff. (Compl. ¶¶ 89-90.)

Defendant mostly disregards these alleged policies, arguing that Plaintiff's allegation that Deputy Loza violated department policies on handcuffing youths defeats a Monell claim based on an official policy. (County MTD at 9.) That is not the case. Unlike the County represents, Monell does not require a showing that an official was "following a policy that violates Constitutional rights." (Id.) Rather, Monell requires a showing that the policies at issue were a "moving force behind the constitutional violations." Monell, 436 U.S. at 694. That Loza is alleged to have followed some policies while flouting others is not determinative. Plaintiff sufficiently alleges that the County's policies on SROs' intervention with students for low-level incidents were a "moving force" behind the alleged Fourth Amendment violations. The Court therefore DENIES County Defendants' Motion as to Plaintiff's Monell claim based on official policies.

### b. Unconstitutional Policy, Practice, or Custom

Even in the absence of an express policy, a municipality's unconstitutional custom or practice "can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Hunter v. Cty. of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011). Plaintiff's Complaint also makes this showing.

Plaintiff describes two incidents where Deputy Loza allegedly used excessive force (on October 8, 2019 and December 9, 2019), months apart and at two different schools. He further alleges that the County and Sheriff's Department maintained four unconstitutional policies, practices, and/or customs that were the moving forces behind these constitutional violations: (1) "SRO intervention in minor misconduct typical of school-age children and/or related to their

disabilities;" (2) "SRO use of excessive and unnecessary physical and mechanical restraint and other physical force on children;" (3) "repeated constitutional violations that were not properly investigated and/or documented and for which the violators were not disciplined, reprimanded, or punished[;]" and (4) "SROs failing to use their body cameras, or using their body cameras improperly, during handcuffings and other use of force incidents at school." (Compl. ¶ 147.) Plaintiff argues that the two alleged handcuffings of C.B. are consistent with County Defendants' specific policies. (See id. ¶¶ 93-94, 100, 113, 135, and 141.) Drawing all inferences in Plaintiff's favor, these two incidents, coupled with the official policies listed above, raise a plausible claim of a widespread custom of unnecessary intervention in minor incidents, failure to deescalate, use of excessive force, and misuse of body cameras. See Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 796 (9th Cir. 2016).

The Court DENIES County Defendants' Motion as to Plaintiff's unconstitutional custom claim.

### c. Failure to Train and Supervise

To state a failure to train claim, Plaintiff must allege that (1) they were deprived of a constitutional right, (2) the County had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact; and (3) their constitutional injury would have been avoided had the city properly trained those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007). A municipality's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 407 (1997). Thus, Plaintiffs may point to "a pattern of tortious conduct" by employees as evidence that a regime of inadequate training was the "moving force" behind their injuries. Id. at 407-08 (citing Canton, 489 U.S. at 390-91).

Plaintiff alleges that the County and Sheriff's Department failed to train and supervise SROs on: (1) "how to safely and appropriately interact with students, especially students with disabilities[;]" (2) "when to abstain from intervening in incidents involving minor and/or disability-related behaviors[;]" and (3) "compliance with state laws and internal procedures pertaining to restraints…" (Compl. ¶¶ 151-153.) Plaintiff relies on national and district-level data, the SRO policies, and the two incidents involving C.B. described above to support these allegations. (County Opp'n at 19.)

The County argues that Plaintiff merely alleges a single instance of unconstitutional activity and fails to establish deliberate indifference. (County MTD at 10-12.) But as discussed above, Plaintiff sufficiently alleges unconstitutional policies (both official and unofficial), which is sufficient to show deliberate indifference. Kirkpatrick, 843 F.3d at 794. The Court therefore finds that Plaintiff sufficiently alleges a Monell claim based on the County's failure to train and supervise SROs, and DENIES County Defendants' Motion as to this claim.

Because the Complaint sufficiently states a Monell claim based on an official municipal policy, an unconstitutional practice or unofficial policy, and failure to train, the Court DENIES County Defendants' Motion as to Claim 2.

### 5. Disability Discrimination (Claims 3, 4, and 5)

Title II of the Americans with Disabilities Act ("ADA") provides that individuals with disabilities cannot be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," nor may they be "subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act similarly provides that qualified individuals with a disability may not be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). California Government Code Section 11135(b) incorporates ADA standards for state-funded entities.

To state a claim under Title II of the ADA, Plaintiff must allege that:

> (1) []he is an individual with a disability; (2) []he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) []he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of [his] disability.

Sheehan, 743 F.3d at 1232. To meet the third element, Plaintiff can show that "a law enforcement officer could have used less force or no force during the performance of his law-enforcement duties with respect to a disabled person." Armstrong v. Newsom, 2021 WL 933106, at *25 (N.D. Cal. Mar. 11, 2021) (citing Sheehan, 743 F.3d at 1232-33).

County Defendants argue that Plaintiff fails to identify any program that he was qualified to participate in, but was excluded from, because of his disability. (County MTD at 13.) County Defendants add that there are no factual allegations to support a claim that Plaintiff was handcuffed because of his disability. (Id. at 14.) The Court disagrees.

First, Plaintiff alleges that he has a disability within the meaning of the applicable statutes, as he has diagnoses of Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"). (Compl. ¶ 14.) Second, while County Defendants appear to adopt a narrow definition of "programs," the Ninth Circuit interprets "services, programs, or activities" under the ADA to encompass "virtually anything that a public entity does." Barden v. City of Sacramento, 292 F.3d 1073, 1076 (9th Cir. 2002). Accordingly, the ADA applies broadly to police activities, including arrests. Sheehan, 743 F.3d at 1232. Plaintiff's Complaint describes the SRO Program and its activities, and alleges plausible facts to support an inference that SROs failed to accommodate C.B.'s disabilities and employed excessive force against him,

amounting to discrimination on the basis of his disability.  (Opp'n at 22; Compl. ¶¶ 20, 29-31, 53, 61-63, 39-40, 162-63, 174.)

Even if Plaintiff did not identify a program he was excluded from, the plain language of the statute provides that a plaintiff may allege that he was either excluded from programs or "subjected to discrimination by any such entity."  42 U.S.C.A. § 12132; see also Bircoll v. Miami-Date Cty., 480 F.3d 1072, 1085 (11th Cir. 2007) ("[T]he final clause of § 12132 protects qualified individuals with a disability from being 'subjected to discrimination by any such entity,' and is not tied directly to the 'services, programs, or activities' of the public entity.").  Plaintiff's allegations support an inference that Deputy Loza "could have used less force or no force during the performance of [her] law-enforcement duties" with respect to Plaintiff, a disabled person.  (See, e.g., Compl. ¶¶ 2-3, 5-8, 46-48, 67-68, 89-114, 123-25.)  Armstrong, 2021 WL 933106, at *25.  Plaintiff therefore states a disability discrimination claim under the ADA, the Rehabilitation Act, and Cal. Gov't Code Section 11135.

The Court DENIES County Defendants' Motion as to Plaintiff's disability discrimination claims (Claims 3, 4, and 5).

### 6. Race Discrimination (Claim 5)

Plaintiff asserts a race discrimination claim under California Government Code Section 11135, which prohibits race-based discrimination by recipients of state funds.  Section 11135 provides a private right of action to challenge disparate impact discrimination.  Cal. Code Regs. tit. 2, § 11154.  Courts apply a burden-shifting framework to analyze disparate impact cases: (1) plaintiffs must show "defendant's facially neutral practice causes a disproportionate adverse impact on a protected class"; (2) "to rebut, the defendant must justify the challenged practice"; and (3) "if defendant meets its rebuttal burden, the plaintiff may still prevail by establishing a less discriminatory alternative."  Darensburg v. Metro. Transp. Comm'n, 636 F.3d 511, 519 (9th Cir. 2011).

County Defendants set forth a bewildering argument to dismiss Plaintiff's racial discrimination claim.  County Defendants repeatedly assert that Plaintiff is "[p]laying the race card" by alleging that he is Black. (County MTD at n.1, 13.)  They further assert that "there are no factual allegations nor any evidence to support any race based discrimination on the part of the County defendants."  (Id. at n.1.)  County Defendants appear to have missed paragraphs 121-25 of the Complaint, which allege that "[t]he Sheriff's Department's school arrest data [] show that Black students are more likely to be arrested and arrested for non-violent offenses than their non-Black peers[,]" and point to relevant statistics.  (Compl. ¶ 121.)  The Complaint further alleges that "Defendants disproportionately arrest Black students for minor and/or disability-related behaviors[,]" and that "Defendants also discriminate against C.B. and other similarly situated Black students with respect to school police restraints…"  (Id. ¶¶ 183-84.)  Plaintiff alleges that "the Sheriff's Department Policies grant SROs broad authority to intervene in incidents involving students, even where the student has committed no crime."  (Id. ¶ 125.)  Plaintiff also alleges that the "implicit and unconscious biases and stereotypes against Black students … are

incorporated into the Sheriff's Department policy allowing SROs to handcuff children who officers perceive as 'combative or threatening.'" (Id. ¶ 184.) These are specific allegations of racial discrimination against County Defendants.

After being directed to these allegations in Plaintiff's Opposition, County Defendants double down on their "race card" argument, arguing in their Reply that "Plaintiff is in fact playing the race card because there are absolutely no allegations related to any County Defendants that Plaintiffs was discriminated against, in any way, based on his race…." (County Reply at 4.) County Defendants may disagree with Plaintiff's allegations, but merely dismissing these (as well as the mere mention of Plaintiff's race) as "playing the race card" is not a legal argument. The Court expects County Defendants to address racial discrimination claims with the same rigor as any other claims by offering legal authorities and arguments as to why they fail. Instead, County Defendants chose to respond with facile jargon, which is both offensive and legally insignificant. County Defendants must do better in this Court, and their "race card" argument is rejected. Taking Plaintiffs' allegations to be true, the Court DENIES County Defendants' Motion as to Claim 5.

### 7. Intentional Infliction of Emotional Distress (Claim 8)

To state a prima facie case for intentional infliction of emotional distress ("IIED"), Plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Miller v. Fortune Commercial Corp., 15 Cal. App. 5th 214, 228–29 (2017) (internal quotation marks and citation omitted). Behavior is considered outrageous where a defendant: "(1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." McDaniel v. Gile, 230 Cal. App. 3d 363, 372 (Cal. Ct. App. 1991).

County Defendants argue that the Complaint does not allege any such extreme or outrageous conduct by Deputy Loza, or any conduct intended to cause emotional distress. (County MTD at 15.) The Court is unpersuaded. Plaintiff alleges that Deputy Loza knew or should have known that Plaintiff was a young child with disabilities, and that he was particularly susceptible to mental distress because of his young age and documented disabilities. (Compl. ¶¶ 3-4, 210.) As discussed above, Plaintiffs have sufficiently alleged that Loza acted unreasonably by pulling, tackling, and handcuffing Plaintiff, even though he could not be charged with a crime. This is compounded by Deputy Loza's position of power over Plaintiff as a resource officer. See, e.g., Wordlow v. Chicago Bd. of Educ., 2018 WL 6171792, at *14 (N.D. Ill. Nov. 26, 2018) ("[A] jury could reasonably find [the resource officer's] conduct 'extreme and outrageous' given: (1) [his] position of power over M.M. as a security officer; and (2) the reasonableness, or lack thereof, inherent in his decision to handcuff [the minor student].") To the extent that County

Defendants disagree about Plaintiff's susceptibility to emotional distress, or whether Loza knew Plaintiff was likely to be distressed by her actions, these are questions of fact not suitable for a motion to dismiss.

The Court DENIES the County's Motion as to Claim 8.

### 8. Battery, Assault, and False Imprisonment (Claims 9, 10, and 11)

County Defendants argue that Plaintiff's battery, assault, and false imprisonment claims fail because Loza did not unlawfully detain or use excessive force on Plaintiff. (County MTD at 5-8.) For the reasons discussed in section A.3. above, the Court finds that Plaintiff sufficiently states a claim for excessive force. The Court therefore DENIES County Defendants' Motion as to Claims 9, 10, and 11.

## B. Individual Defendants

Individual Defendants move to dismiss Plaintiff's claims,[2] arguing that they are entitled to discretionary immunity under Cal. Gov't Code Section 820.2. As discussed in Section A.2 as to the County Defendants, discretionary act immunity is construed "as narrowly as possible[,]" and the burden is on government employees to establish that they are entitled to such immunity. A.E. ex rel. Hernandez, 666 F.3d at 639-40.

First, much like with County Defendants, discretionary act immunity does not shield Individual Defendants from liability for false imprisonment, Robinson, 278 F.3d at 1916; the use of excessive force, Rodriguez, 891 F.3d at 799; or state law claims arising from the alleged use of force, such as intentional infliction of emotional distress, Blankenhorn, 485 F.3d at 487. Individual Defendants appear to acknowledge the second such limitation, noting that if the Court grants their Motion, "Plaintiff may still proceed against Moving Defendants under his first cause of action for violation of his civil rights." (Arellano MTD at 9.) However, as Plaintiff points out, Plaintiff's allegations of excessive force also support his remaining state law claims against Individual Defendants for battery, assault, false imprisonment, and IIED.

Individual Defendants further argue that Arellano and Owens were acting within their authority as law enforcement officers, and exercising their discretion in responding to Plaintiff's conduct. (Arellano MTD at 6-8.) But in applying the discretionary act immunity, "[a]n employee's normal job duties are not determinative; the burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity for a specific policy

---

[2] Plaintiff asserts Claims 1 (unreasonable seizure and excessive force), 8 (intentional infliction of emotional distress), 9 (false imprisonment), 10 (battery), 11 (assault), and 12 (negligent supervision) against Individual Defendants Arellano, Scott, Walker, and Owens. (See Compl.)

decision made by an employee who consciously balanced the decision's risks and benefits." Id. at 640. Individual Defendants make no such showing here.[3]

Finally, Individual Defendants argue that Plaintiff failed to allege any statute imposing a duty on Defendant Scott, the District's Director of Safety and Security, to supervise or train the District's Campus Security Officers. (Arellano MTD at 6.) That is because California regulations require CSOs have training and verification as school security officers before their hiring. (Id. (citing Cal. Educ. Code § 38001.5).) However, Cal. Educ. Code Section 38000 also states that security departments established by a school district are "under the supervision of a chief of security." Cal. Educ. Code § 38000(a). Moreover, the District's CSO position description states that CSOs must receive ongoing training "[u]nder the general direction of the Director of Safety and Security." Id. at § 38001.5(b). Even more, the Complaint alleges that Scott supervised or directed the CSO program, and that on information and belief, he gave CSOs verbal orders, rather than promulgating policies and procedures. (Compl. ¶¶ 54-58.) The Court finds that Scott may be held liable under the alleged facts.

Taking Plaintiff's allegations to be true and construing all inferences in his favor, the Court DENIES Individual Defendants' Motion.

## C. District Defendants

Plaintiff asserts Claims 3 (ADA violations), 4 (Rehabilitation Act violations), 5 (race and disability discrimination), 6 (violation of Cal. Civ. Code Section 51), 7 (California Constitution violations), 8 (IIED), 9 (false imprisonment), 10 (battery), 11 (assault), and 12 (negligent supervision) against District Defendants.

District Defendants move to dismiss the state law claims (Claims 5-12), arguing that pursuant to the Eleventh Amendment, they are immune from suit in federal court for these claims. (See District MTD.) Plaintiff does not oppose the District's Motion as to these claims. (See District Non-Opp'n.) The Court therefore GRANTS the District MTD and DISMISSES Claims 5-12 against District Defendants.

//
//
//
//

---

[3] Individual Defendants also argue that "Plaintiff should not be able to claim that his disabilities caused him to behave the way he was reported to have behaved, and then impose legal principles that protect students with disabilities in order to suggest that he was improperly contained based solely on his race." (Arellano Reply at 3 (emphasis in original).) But at the motion to dismiss stage, the Court must in fact assume that Plaintiff's allegations are true, and construe all inferences in Plaintiff's favor.

## V. CONCLUSION

For the reasons above, the Court GRANTS the District's Motion, and GRANTS IN PART and DENIES IN PART the County's and Arellano's Motion. The June 21, 2021 hearing is VACATED.

**IT IS SO ORDERED.**