# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.B., by and through his guardians ad litem W.B. and B.T., <br><br> Plaintiffs, <br><br> v. <br><br> MORENO VALLEY UNIFIED SCHOOL DISTRICT; MARTINREX KEDZIORA, in his official capacity as Moreno Valley Unified School District Superintendent; DARRYL SCOTT; SCOTT WALKER; DEMETRIUS OWENS; MANUEL ARELLANO; LONIESHA KING; COUNTY OF RIVERSIDE; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; DEPUTY SHERIFF NORMA LOZA; DEPUTY SHERIFF JERSSY TOSCANO; and DOES 3-10. <br><br> Defendants. | Case No. 5:21-cv-00194-JGB (SPx) <br><br> [Assigned to the Honorable Jesus G. Bernal-Riverside, Courtroom 1] <br><br> **ORDER GRANTING INJUNCTIVE AND DECLARATORY RELIEF, INCLUDING PERMANENT INJUNCTION, ON PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION** <br><br> Complaint Filed: February 2, 2021 |

On October 13, 2023, this Court issued its Order Granting Plaintiff's Partial Motion for Summary Judgment, Dkt. No. 254, which it attaches to this Order for Permanent Injunction as Attachment 1. The Court found Defendant Moreno Valley Unified School District (MVUSD)'s "methods of administration in maintaining its police program violate the ADA and Section 504 of the Rehabilitation Act" and ordered Plaintiff C.B. ("Plaintiff"), and MVUSD (collectively, the "Parties") to design a remedy to bring MVUSD into compliance. *Id.* at 17; 22.

On June 18, 2024 the Parties jointly requested the Court for entry of stipulated injunctive and declaratory relief. The Court has reviewed the Parties' submission and finds that a permanent injunction is necessary and justified to remedy MVUSD's violation of the ADA and Section 504, to address the irreparable harm to Plaintiff, and to serve the public's interest. Accordingly:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. The Parties' Joint Motion for Entry of Stipulated Injunctive and Declaratory Relief Pursuant to Order for Partial Summary Judgment is granted.

2. To bring Defendant MVUSD's methods of administering its police program into compliance with the ADA and Section 504, MVUSD shall:

   a. Develop and implement new policies, procedures, practices, and customs, or modify and implement existing policies, procedures, practices, and customs, to ensure MVUSD's students with disabilities are not disproportionately removed[1], restrained[2], and/or referred to

---

[1] The terms "removed," "remove," or "removal" shall mean or refer to any means by which MVUSD staff or law enforcement present on any MVUSD school campus, including School Resource Officers, exercise school discipline that causes or requires a student with a disability to leave the student's classroom to a different in-school or out-of-school setting during the course of a regular school day and includes in-school suspensions, out-of-school suspensions, and/or placement in a different classroom where the purpose of the classroom is to seclude, isolate, or "cool-down" a student.

[2] The terms "restrained," "restrain," and "restraint" shall refer to any physical intervention or use of force used by MVUSD staff and/or law enforcement including by a SRO, to immobilize a student or reduce the ability of such student to move the student's torso, arms, legs, or head freely. The

        MVUSD's Campus Security Officers[3] ("CSOs") or law enforcement[4], including School Resource Officers[5] ("SROs"), at any MVUSD school;

    b.    Develop new trainings, or modify existing trainings, to ensure all school staff employed or contracted by MVUSD who interact with MVUSD students with disabilities, including CSOs and SROs, are trained to avoid the use of removal, restraint, and/or referral to CSOs or law enforcement, including SROs, and to use disability-appropriate alternatives to removal, restraint, and referrals;

    c.    Require and provide training to current and future SROs who are assigned to MVUSD schools pursuant to MVUSD's contract with any sheriff's department, including the Riverside County Sheriff's Department, in the following areas:

        i.    Federal and state laws protecting the rights of students with disabilities;

        ii.    Provision of appropriate accommodations and/or positive behavior interventions for students with disabilities;

        iii.    Disability specific de-escalation techniques and alternatives to removal and restraints; and

---

term includes, but is not limited to, holding or grabbing a student's arm or wrist to escort, compel, or coerce the student to move to another location within the school; mechanical restraints such as the use of handcuffs or prone restraints; and chemical restraints such as pepper spray.

[3] Campus Security Officers refers both to individuals bearing that title who are employed or contracted by MVUSD to provide campus security, and to individuals who may be employed or contracted by MVUSD in the future to perform the same role and function under a different title than Campus Security Officer.

[4] The terms "law enforcement" shall refer to officers responsible for enforcing laws, investigating crimes, and making arrests, such as police officers, sheriff's deputies, and school resource officers.

[5] For the purposes of this Order, School Resources Officers shall refer to Sheriff's deputies or police officers assigned to MVUSD school campuses.

        iv.    MVUSD policies and procedures implemented in accordance with this Order.

    d.    Modify all current and future MVUSD contracts, agreements, and/or memoranda of understanding with any law enforcement agency, including the Riverside County Sheriff's Department, to include the training requirements set forth above in Paragraph 2(c) of this Court's Order.

    e.    Document and annually report data, disaggregated by race and disability, on the following, as required by federal and state laws:

        i.    Removals of students by MVUSD staff, including CSOs;

        ii.    Removals of students by law enforcement, including SROs;

        iii.    Use of restraints on students by MVUSD staff, including CSOs;

        iv.    Use of restraints on students by law enforcement, including SROs; and

        v.    Referrals of students to CSOs and law enforcement, including SROs.

    f.    Monitor disproportionate rates of use of removal, restraint, and referrals on students with disabilities, including by reviewing annually the data listed above in Paragraph 2.

## IMPLEMENTATION OF INJUNCTION

**A.**    **Appointment of Independent Monitor**

    1.    *Selection of Independent Monitor*: The Parties agree to the appointment of Dr. Jaime Hernandez as the third-party Independent Monitor who will be responsible for implementing the Injunction and monitoring compliance with this Order. The Parties agree that Dr. Hernandez has the following expertise:

a. Familiarity with the relevant federal and California statutes and regulations concerning the rights of students with disabilities and protections against disability-based and race-based discrimination;

b. Demonstrated understanding of the provision of disability-specific behavioral accommodations, supports, and de-escalation techniques;

c. Substantial practical and field experience designing and implementing programs or systems in public school districts that comply with and promote the aforementioned rights and anti-discrimination laws protecting students with disabilities;

d. Familiarity and experience with a wide array of relevant data metrics, such as academic, social/emotional, behavioral, attendance, etc. and the corresponding expertise necessary to cross-tabulate/triangulate and analyze data metrics; and

e. Ability to be physically and virtually present in the City of Moreno Valley as needed to fulfill their obligations as the Independent Monitor.

2. *Scope of Work*: The Independent Monitor will be responsible for proposing and implementing a plan of action to bring MVUSD's methods of administration into compliance with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act as outlined below in Section B, and for overseeing MVUSD's compliance with this Court's Order and Permanent Injunction.

3. *Authority of the Independent Monitor*: The Independent Monitor shall have broad discretion to implement, and monitor MVUSD's compliance with, the Court's Order and Permanent Injunction. To carry out its duties and responsibilities as described below in Section B, the Independent Monitor shall have the authority to retain and/or consult with, any expert, consultant, and/or personnel deemed necessary.

4. *Term*: The Independent Monitor shall be appointed for a period of four years, which shall commence 30 days following execution of a services contract

between MVUSD and the Independent Monitor, as specified below in Section B. The Independent Monitor's term may be extended pursuant to the terms and conditions set forth below in Section C.8.

5. *Diligence of Independent Monitor and Support*: In performing its duties under this Order, the Independent Monitor shall proceed with reasonable diligence to carry out the duties and responsibilities assigned below in Section C, and in the course of such duties and responsibilities, shall retain consultants, experts, and other personnel as may be reasonably required.

6. *Independent Monitor's Access to Information*: In performing duties under this Order, the Independent Monitor and any expert, consultant and/or personnel retained by the Independent Monitor, shall be entitled to access to all relevant MVUSD records and data, including student records, except for materials protected by the attorney-client privilege or attorney work-product doctrine from either Party. The Independent Monitor and any retained personnel by the Independent Monitor shall have access to MVUSD premises, including observation of classroom instruction and shall be permitted to communicate with MVUSD staff, as necessary to perform the Independent Monitor's duties under this Order. The Independent Monitor and any expert, consultant and/or personnel retained by the Independent Monitor shall maintain the confidentiality of all confidential and privileged materials and shall not disclose the content of the materials to any party or person. The Independent Monitor and any expert, consultant and/or personnel retained by the Independent Monitor shall enter into an agreement with MVUSD that allows the Independent Monitor and its personnel to have access to student records in keeping with the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, 34 C.F.R. Part 99, Education Code section 49060 *et seq.*, and similar state laws, and acknowledges compliance with relevant privacy and confidentiality laws.

7. *Ex Parte Communications*: The Independent Monitor may have *ex parte* communications at any time with counsel for the Parties and employees, agents, contractors, and all others working for or on behalf of MVUSD. All counsel for the

Parties will have access to any information considered by the Independent Monitor, except for *ex parte* communications with other Parties or where such access is not permitted under applicable California or federal law. Nothing in this Order is intended to limit any Party's authority under federal and state law to access information and documents.

8. *Neutrality of Independent Monitor*: The Independent Monitor shall remain impartial, neutral, and independent in its relations with and conduct toward the Court, MVUSD, and Plaintiff. In carrying out its duties under this Order, the Independent Monitor shall act upon and otherwise exercise its independent professional judgment.

**B.     Independent Monitor Services Contract**

1. *Services Contract*: Within 30 days of Court approval, MVUSD shall retain and execute a services contract with the Independent Monitor. The scope of work of the services contract with the Independent Monitor will be limited to that described as the Independent Monitor's duties set forth in Section C below.

2. *Compensation*: Throughout the term of the Independent Monitor, and any extensions thereof, the entirety of Independent Monitor's fees, costs, and expenses, including fees, costs, and expenses incurred in the retention or assistance of other experts, consultants, and/or personnel deemed necessary, shall be paid by MVUSD. The services contract with the Independent Monitor shall set forth the procedures, conditions, and frequency of payment to the Independent Monitor.

    a.     *Terms for Compensation*: MVUSD shall: (i) compensate the Independent Monitor for professional services; (ii) reimburse the Independent Monitor for all expenses incurred by the Independent Monitor in performing its duties under this Order; and (iii) compensate and reimburse the expenses of any consultants, experts, or other personnel retained to assist the Independent Monitor.

    b.     *Compensation Amount*: The Independent Monitor's total annual salaries (including salaries and wages of other vendors, consultants,

research assistants or other personnel the Independent Monitor may retain), costs, and expenses is anticipated to not exceed $250,000. If the Independent Monitor's anticipates its annual salary, expenses and costs will exceed this amount, the Independent Monitor shall notify MVUSD within 30 days and explain the reasons for the anticipated increase(s). MVUSD shall pay the amount in full unless MVUSD has good cause to believe the increased costs are unreasonable or unjustified, in which case MVUSD shall follow the procedures set forth under the Parties' dispute resolution process set forth below under Section D.

3. *Independent Monitor as Agent of MVUSD*: In performing its duties under this Order, the Independent Monitor, and any retained consultants, experts, or other personnel, shall be deemed an agent of MVUSD and shall be entitled to all immunities applicable to the conduct of school district officials or personnel. MVUSD shall defend, indemnify, and hold harmless the Independent Monitor from and against any and all liability, action or proceeding arising from or related to the performance of any act, obligation or duty performed in connection with this Order except for any matter that involves or results from willful misconduct.

4. *Removal for Cause*: The Parties agree that once selected and after a service contract is entered with MVUSD, the Independent Monitor may be removed for cause upon the mutual written agreement of counsel for Plaintiff and counsel for MVUSD setting forth the cause constituting the basis for such removal. Cause for removal shall be: (a) material failure or refusal to perform duties required of the Independent Monitor as outlined in Section C below; or (b) misconduct on the part of the Independent Monitor. If either Party identifies cause to remove the Independent Monitor, that Party shall notify the other Party of such cause immediately, after which the Parties shall meet and confer within 30 days to try to reach agreement regarding the Independent Monitor's removal. If the Parties are unable to reach mutual agreement, no later than 30 days

thereafter, either Party may move the Court for removal of the Independent Monitor. The Party making such motion must demonstrate by clear and convincing evidence that cause for removal exists. In the event the Independent Monitor is removed pursuant to the provisions of this Section, Plaintiff shall select a replacement Independent Monitor pursuant to the requirements set forth above in Section A.1.

**C.    Duties of the Independent Monitor**

1. *Baseline Review and Development of Action Plan:* Within four months of approval of the Independent Monitor's services contract, the Independent Monitor shall provide the Parties in writing a proposed plan of action (the "Action Plan") to bring MVUSD's methods of administration into compliance with the ADA and Section 504. The Action Plan shall be informed by:

   a. A review of MVUSD's current policies, procedures, practices, customs, and trainings to establish a baseline understanding of MVUSD's current methods of administration;

   b. Data and information maintained by MVUSD that the Independent Monitor deems necessary or beneficial to the preparation of the Action Plan; and

   c. Consultation with any experts, consultants, and/or personnel the Independent Monitor deems necessary.

2. *Goals of the Action Plan*: The Action Plan shall delineate the steps and actions MVUSD must take to produce, at a minimum, data-based outcomes, systems change, and a training program, as described below:

   a. Data Based Outcomes

      i. Substantial reduction of the number of referrals and the disproportionate rates of referrals of disabled students and Black disabled students to CSOs and to law enforcement, including SROs;

        ii.     Substantial reduction of the number of removals and the disproportionate rates of removal of disabled students and Black disabled students;

        iii.    Substantial reduction in the number of incidents involving restraints and the disproportionate rates of use of restraints on disabled students and Black disabled students;

        iv.    Substantial increase in the behavioral supports and assessments[6] offered to students with disabilities to address disability-related behaviors, such as Behavior Intervention Plans[7]; and

        v.     Any other related metrics identified during the Independent Monitor's baseline review of MVUSD methods of administration.

    b.    Systems Change

        i.     Develop new policies and procedures, or modify existing policies and procedures, to ensure compliance with federal and state laws and regulations and employ best practices in the areas of removals, restraints, and referrals to CSOs and law enforcement, including referrals to SROs;

---

[6] Such assessments can include the Functional Behavior Assessment or FBA which is an assessment designed to isolate target behaviors, develop hypotheses regarding the function of the target behavior, and create a behavior plan to address the target behaviors with positive strategies and interventions.

[7] Behavior Intervention Plan or BIP refers to a plan created by appropriately trained professionals for an individual student comprised of positive behavior interventions, strategies, and supports, which may include modifications to the nature of instruction, curriculum, or school routine. Such plans are typically developed based on the outcome of a Functional Behavior Assessment and reflect feedback from parents or guardians regarding the emotional, mental, and physical health of the student. While such plans are often prepared for students with a documented disability, they can be prepared for any student having difficulty with behavior.

ii. Establish a reliable data collection system that documents, stores, and tracks data, disaggregated by, at minimum, race and disability, on the use of removals, restraints, and referrals by MVUSD staff, including CSOs, and by law enforcement, including SROs;

iii. Recommend and ensure MVUSD schools have adequate staff dedicated to providing behavioral and social-emotional supports and interventions, such as Board Certified Behavior Analysts, counselors, and mental health providers;

iv. Implement accountability mechanisms for MVUSD staff, including CSOs, who inappropriately and/or disproportionately use removal, restraints, and referrals to CSOs and law enforcement, including SROs, on students with disabilities;

v. Implement accountability mechanisms for SROs who inappropriately and/or disproportionately use removal and restraints on students with disabilities;

vi. Implement mechanisms to timely notify parents and guardians of the removal, restraint, and/or referral to CSOs and to law enforcement, including to SROs, of students with disabilities; and

vii. Ensure that all current and future MVUSD contracts, agreements, and/or memoranda of understanding with any law enforcement agency, including the Riverside County Sheriff's Department, requires SROs receive training in the areas listed below in Section C.2.c.i.

        c.     Training Program

              i.     Identify competent trainers, produce a training schedule, and require all relevant MVUSD staff, including CSOs, are trained in the following:

                     1.     New or revised MVUSD policies and procedures as referenced above in Section 2(b);

                     2.     De-escalation techniques and strategies;

                     3.     Education and understanding of disabilities, their definitions, effective disability accommodations, and their impact on students' educational opportunities;

                     4.     Federal and state law protections and entitlements for students with disabilities;

                     5.     Documentation, data maintenance, and reporting requirements referenced above in Section 2(a)-2(b);

                     6.     Behavioral supports and accommodations for students with disabilities such as Behavioral Intervention Plans; and

                     7.     Identification and eradication of implicit and explicit bias.

              ii.     Require a training schedule for SROs assigned to MVUSD campuses and provide trainings in the categories listed above in Section C.2.c.i.

    3.     *Finalization of Action Plan*: The Independent Monitor shall share the proposed Action Plan with the Parties. The Parties shall have 30 days from receipt of the proposed Action Plan to review and provide comment to the Independent Monitor. Within 30 days of receiving feedback from the Parties, the Independent Monitor shall analyze the Parties' comments and revise the Action Plan. The Independent Monitor shall attempt to resolve any disputes between the Parties regarding the feedback to the

Action Plan. The Parties may resolve any disputes regarding feedback to the Action Plan that cannot be resolved by the Independent Monitor through the dispute resolution process set forth below in Section D.

4. *18-Month Implementation Schedule*: Within 60 days of the Independent Monitor finalizing the Action Plan, MVUSD shall develop and submit to the Independent Monitor and the Plaintiff a proposed initial 18-month implementation schedule that includes benchmarks and deadlines to ensure progress and successful implementation of the Action Plan. MVUSD shall develop subsequent 18-month implementation schedules until the goals of the Action Plan are achieved. The Independent Monitor shall provide MVUSD with comments and recommendations on its 18-month implementation schedule(s) within 30 days of submission. Plaintiff retains the right to make comments on the MVUSD's implementation schedule(s) for consideration by the Independent Monitor. The Independent Monitor may approve or reject the MVUSD's proposed implementation schedule(s) in its entirely or as to its parts, and if further revision is required, the Independent Monitor will set the timeline for review and approval. If MVUSD fails to submit an Implementation Schedule at the time specified in the Action Plan or fails to develop a satisfactory Implementation Schedule, the Independent Monitor shall develop and circulate a proposed Implementation Schedule. The Parties will have 15 days to comment on the Independent Monitor's proposed Implementation Schedule.

5. *Compliance Period*. The compliance period shall begin upon the Independent Monitor's approval of an initial 18-Month implementation Schedule. The Independent Monitor shall monitor MVUSD's compliance for a minimum of three years unless the Independent Monitor determines that the compliance period needs to be extended further pursuant to the terms and conditions set forth below in Section C.8.

6. *Community Input*. The Independent Monitor shall develop a mechanism for community input to identify and report any systemic non-compliance by MVUSD of the Action Plan.

7. *Regular Communication with Parties*. In carrying out their duties under this Order, the Independent Monitor shall meet with the Parties on a bi-monthly (every other month) basis for the first year following entry of this Order and at least quarterly thereafter. The Independent Monitor may require more frequent meetings as it determines necessary. The Independent Monitor must consider all reasonable feedback and input from the Parties provided at these meetings or otherwise.

8. *Term Extensions*. The Independent Monitor's four-year term may be extended as follows:

   a. *Stipulated Extension of Compliance Period*: Six months prior to the conclusion of the Independent Monitor's four-year term, the Parties shall stipulate to extending the Independent Monitor's term and the terms of this agreement only if the Independent Monitor determines that MVUSD (i) will fail to meet the requirements of the Action Plan by the end of the four-year term; (ii) cannot continue implementation of the outcomes and systems change without the presence of a monitor; and /or (iii) causes delay in implementation of the Action Plan for failure to adhere to the terms of this agreement and/or failure to cooperate with the Independent Monitor. Two months before the expiration of the Independent Monitor's term, the Parties shall jointly file with the Court a Notice to extend the Independent Monitor's Term and the terms of this agreement for a period of time necessary to ensure either compliance with the Action Plan or make up for the lost time.

   b. *Tolling during Dispute Resolution*: The term of the Independent Monitor shall be automatically tolled for any length of the time that dispute resolution is necessary.

   c. *Other Reasons for Extension*: If Plaintiff seeks an extension of the Independent Monitor's term for reasons other than those described

above in Section B.4.a., Plaintiff must submit a Notice to the Court two months prior the Independent Monitor's Term ending and show good cause for why an extension is necessary. The Notice shall identify an appropriate extension of time to ensure that the goals of the monitoring are met. MVUSD shall have the right to respond to any such Notice within 14 days after the Notice's filing before the Court rules on the request for an extension. Plaintiff may apply for additional extensions under the same standard by filing a Notice requesting an extension no later than two months before the end of any extended term. Otherwise, the presumptive end of the Independent Monitor's term shall be four years.

D. **Dispute Resolution**

1. In the event either party invokes the dispute resolution to remedy the requirements of this Order, the following procedures shall apply:

    a. *Notification in writing*: The disputing party shall provide written notice and a statement of the dispute describing the alleged non-compliance and specifying the provision of the Court's Order and Permanent Injunction violated ("Notice of Non-Compliance") to the opposing party and the Independent Monitor. The noticed party shall provide a written response to the alleged violation within 14 calendar days from receipt of the Notice of Non-Compliance and, within 21 calendar days from the Notice of the Non-Compliance, the Parties and if applicable, the Independent Monitor, shall meet and confer in a good faith effort to resolve their dispute informally.

    b. *Optional Mediation:* If the Parties are unable to resolve the dispute through the meet and confer process described above, any Party may request to submit the Dispute to an agreed-upon mediator for resolution. A Party's election to seek mediation will bind the other

|   |   |
|---|---|
| | Party to pursue medication to its completion. The Parties shall then submit the Dispute to the selected mediator within thirty (30) days of meeting and conferring, who shall have the authority to assist the Parties in resolving the Dispute, but shall not have the authority to direct any Party to take or refrain from taking any action or to render decisions. The mediation shall be held and completed within forty-five (45) calendar days of submission unless the mediator's calendar will not allow for such scheduling. In such instance, the mediation shall be scheduled as soon as practicable. |
| c. | *Motion to Enforce*: If a Party fails to meet and confer or if the Parties are unable to resolve the dispute through the mediation process described above, any Party may seek enforcement of the Court's Order and Permanent Injunction by motion to the Court. In the event that a Dispute is submitted to the District Court for decision, and the Plaintiff prevails, the Court may, in its discretion, award all reasonable attorneys' fees and costs incurred by Plaintiff's counsel. |

**E. Other Miscellaneous Provisions**

1. *Plaintiff's Attorney's Fees and Costs*: Plaintiff is entitled to recover reasonable attorneys' fees and other expenses pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a for work reasonably performed by Plaintiff for purposes of monitoring and ensuring MVUSD's compliance with the Court's Order and Permanent Injunction, including cooperation with the Independent Monitor. Reasonable fees and expenses shall be awarded in amounts agreed to by the Parties or, absent agreement, as determined by the Court upon Plaintiff's noticed motions. Plaintiff shall submit an itemized statement to MVUSD for intervals of not less than 120-day periods. The fees and costs submitted by itemized statement shall be considered reasonable unless otherwise demonstrated by pay MVUSD. MVUSD shall, within 60 days of receipt of the itemized statement, pay such amount requested in the statement. Any claim for attorneys' fees and expenses can

be resolved by mutual agreement of the parties using the Dispute Resolution Procedure outlined in Section D above. In the event MVUSD refuses or otherwise fails to pay all or any portion of the itemized statement, Plaintiff's counsel may move this Court for an order requiring MVUSD to issue payment not less than 60 days after MVUSD's deadline to pay the statement amount.

        2.    *Retention of Jurisdiction*: The Court expressly retains jurisdiction over this matter including, throughout the term of the Independent Monitor and any extensions granted therein, to enforce any part of this Order and Permanent Injunction.

Date: June 28, 2024

                                    Honorable Jesus G. Bernal
                                    United States District Judge