**THOMPSON & COLEGATE LLP**
**3610 Fourteenth Street**
**P. O. Box 1299**
**Riverside, California 92502**
**Tel: (951) 682-5550**
**Fax: (951) 781-4012**

MICHAEL J. MARLATT (SBN 115957)
mmarlatt@tclaw.net
DANIEL C. FAUSTINO (SBN 207553)
dfaustino@tclaw.net

Attorneys for Defendants, MORENO VALLEY UNIFIED SCHOOL DISTRICT, MARTINREX KEDZIORA, in his official capacity as Moreno Valley Unified School District Superintendent, DARRYL SCOTT, SCOTT WALKER, DEMETRIUS OWENS, MANUEL ARELLANO

UNITED STATES DISTRICT COURT

CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.B., by and through his *guardians ad litem* W.B. and B.T.,<br><br>Plaintiffs,<br><br>v.<br><br>MORENO VALLEY UNIFIED SCHOOL DISTRICT; MARTINREX KEDZIORA, in his official capacity as Moreno valley Unified School District Superintendent; DARRYL SCOTT; SCOTT WALKER; DEMETRIUS OWENS; MANUEL ARELLANO; COUNTY OF RIVERSIDE; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; CHAD BIANCO, in his official capacity as Riverside County Sheriff; DEPUTY SHERIFF NORMA LOZA; and DOES 1-10,<br><br>Defendants. | CASE NO. 5:21-CV-00194-JGB (SPx)<br><br>JUDGE:  Hon. Jesus G. Bernal<br><br>**DECLARATION OF GRANT STIEFEL IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>TRIAL DATE:     November 21, 2023<br>ACTION FILED:  February 2, 2021 |

1

DECLARATION OF GRANT STIEFEL

# DECLARATION OF GRANT STIEFEL

I, Grant Stiefel, declare as follows:

1.      My name is Grant Stiefel, and I am a full-time consultant and testifying expert specializing in attorneys' fees. I am a member of the California State Bar and the principal and founder of Litigation Limited, a legal fee auditing and consulting firm. I have been retained on behalf of Defendants MORENO VALLEY UNIFIED SCHOOL DISTRICT, MARTINREX KEDZIORA (in his official capacity as Moreno Valley Unified School District Superintendent), DARRYL SCOTT, SCOTT WALKER, DEMETRIUS OWENS, and MANUEL ARELLANO ("Defendants") to provide expert opinion in this matter. I personally drafted this declaration, and the conclusions herein are the result of my independent analysis. Unless otherwise stated, I have personal knowledge of the facts set forth and am prepared to testify accordingly.

2.      As one of the few full-time legal fee consultants in the country, I am frequently retained by litigants and law firms to provide expert testimony on attorneys' fee disputes and fee-shifting motions. Over the past two decades, I have reviewed more than $1 billion in law firm billings and testified as a fee expert in state and federal courts, JAMS and AAA arbitrations, attorney-client fee arbitrations, and before the Ninth Circuit Court of Appeals. I have also provided live testimony as a qualified attorney fee expert in trial courts, arbitrations, and State Bar proceedings.

3.      I have no financial interest in the outcome of this dispute, and my compensation is not contingent upon the substance of my opinions or the final determination of this matter.

4.      A detailed summary of my expertise and qualifications is provided in paragraphs 5 through 31 of this declaration, and my *curriculum vitae* is attached as **Exhibit A.**

## **BACKGROUND AND QUALIFICATIONS**

5.      ***Attorney Fee Consulting Experience***. For over a decade, my firm, Litigation Limited, has provided legal fee consulting services to corporate clients across the United States and Canada. Our work includes reviewing and auditing legal invoices, advising on outside counsel selection and management, and developing and implementing billing guidelines to optimize legal spending. Litigation Limited's clients include publicly traded corporations, financial institutions, universities, and government agencies at both the federal and state levels.

6.      As a legal fee consultant, I evaluate hourly rates, billing practices, and overall legal costs across multiple jurisdictions, law firm sizes, and practice areas. I also assess the efficiency of outside counsel and assist legal departments in managing complex, multi-jurisdictional litigation portfolios.

7.      ***Attorney Fee Testifying Experience***.  I am frequently retained as an expert witness in attorneys' fee disputes, providing testimony in state and federal courts and attorney-client fee arbitrations. I have testified in over 160 matters on: (i) the reasonableness of legal fees, (ii) the propriety of attorney billing practices, (iii) reasonable hourly rates and hours billed in the context lodestar analyses; and (iv) litigation management issues.

8.      I have testified as a fee expert in California state and federal courts on more than one hundred occasions, and my testimony on attorneys' fees has been accepted in jurisdictions across the country, including Alabama, Colorado, Connecticut, Florida, Georgia, Maryland, Nevada, New Jersey, New York, Ohio, Pennsylvania, Texas, Washington, and West Virginia. Additionally, I was invited to testify before the Seoul High Court of the Republic of Korea (equivalent to the Korean Court of Appeals) on matters of California law.

9.      My field is highly specialized, with only a handful of full-time attorney fee experts in the United States possessing experience comparable to mine. Since founding Litigation Limited, I have reviewed and provided opinions on billing

practices across firms of all sizes, including many of the world's largest law firms.

10.   I have been retained as a fee expert by numerous prominent law firms, including: O'Melveny & Myers, Latham & Watkins, Jones Day, Quinn Emmanuel, Orrick Herrington & Sutcliffe, McDermott Will & Emery, Loeb & Loeb, Wilson Elser, Morrison & Foerster, Fisher Phillips, Sheppard Mullin, Dykema Gossett, Stroock Stroock & Lavan, Buchalter Nemer, Littler Mendelson, Cappello & Noël, Reed Smith, Vedder Price, Snell & Wilmer, Duane Morris, Holland & Knight, Gordon Rees, Perkins Coie, and Steptoe & Johnson.

11.   I have also been retained as an expert by many plaintiffs' firms, class action firms, defense firms, and sole practitioners. Around half my expert testimony is on behalf of plaintiff's lawyers who are seeking fees.

12.   My testimony has been sought by numerous corporate and institutional clients, including Apple, American Airlines, Citibank, Wells Fargo, FitBit, Bridgestone, Beats by Dre, Verizon, Toyota, Anthem Blue Cross, the Los Angeles Times, Los Angeles World Airports, Los Angeles Unified School District, the County of Los Angeles, and the University of Southern California, among many others. I have been retained as a fee expert on several occasions by the Superior Court of California and have testified on behalf of the Superior Courts for Orange County, Santa Clara County, and Ventura County. I have also been retained by the United States Department of Justice as a testifying fee expert.

13.   Trial courts have noted that I have "***vast experience as an attorney and attorneys fee expert***" and have called my analysis and opinions to be "well-reasoned" and my conclusions "fair and reasonable." *Miller v. Desert Community College Dist.*, Case No. PSC1904248 (Riverside County Superior Court, March 3, 2023 Order on Motion for Attorneys' Fees); *see also Elmy v. Related Management Co.*, Orange County Superior Court Case No. 30-2019-01105181-CU-BT-CJC, 2022 Cal. Super. LEXIS 22337, at *6 (April 4, 2022 Order on Motion for Attorneys' Fees) ("***the Court gives weight to the expert Declaration of Grant D. Stiefel on attorney fee billing***").

DECLARATION OF GRANT STIEFEL

14. My methodology for analyzing flawed billing practices (e.g., block-billing, excessive conferencing, vague billing entries) has been adopted by multiple courts, leading to significant fee reductions. *See, e.g.*, *Courthouse News Service v. Planet*, Case No. CV 11-08083 SJO (FFMx), October 17, 2016 Order on Attorneys' Fees (C.D. Cal.) ("*Planet*") (court approved and adopted Declarant's analysis of vague, heavily redacted, and block-billed entries and reduced award by $894,872.01); *MMM Holdings v. Reich*, Case No. 30-2015-00822123-CU-BT-CJC, August 14, 2018 Order on Attorneys' Fees (Cal. Sup. Ct.) ("*MMM Holdings*") (Declarant's expert testimony showed that the fee request was block-billed, overly redacted, padded with excessive attorney conferencing, and improperly staffed, leading the trial court to cut the statutory fee award by more than 75 percent); *Godwin v. World Healing Center Church, Inc.*, Case No. 8:21-cv-00555-JLS-DFM, October 20, 2021 Order Granting In Part Plaintiff's Motion for Attorney Fees (C.D. Cal.) (Declarant's analysis showed that the fee request was padded with excessive attorney conferencing and duplicative work, leading court to cut fee request by 84 percent).

15. Judges and arbitrators have consistently found my analysis to be methodologically sound, reliable, and objective:

> "***Mr. Stiefel is one of the foremost experts in the country on hourly rates for attorneys and his expertise and experience is impressive****. The Arbitrator gave very careful consideration to his Declaration in that Mr. Stiefel, even though retained by Claimant as an expert, did not appear to the Arbitrator to be biased in his opinions […] his background is impeccable, and he has testified for both Plaintiffs and Defendants, both in supporting and opposing fee applications*."
> Hon. Eric M. Epstein, *Thomas v. Security Industry Specialists, Inc.*, July 13, 2023 Final Award of Arbitrator, AAA Case No. 01-21-0004-0957].

> "***Mr. Stiefel's qualifications [as a testifying fee expert] cannot seriously be in dispute.***" Hon. Michael Paul Lindfield,

*Hehir v. Kim, et. al.*, Los Angeles County Superior Court Case No. BC485630, Trial Proceedings, February 14, 2014.

16.     I have provided live expert testimony in numerous trials and arbitrations, including *SK Law Group v. PMBS*, Los Angeles County Superior Court (trial testimony); *Hehir v. Kim,* Los Angeles County Superior Court (trial testimony); *Brown v. Gilles*, ADR Services Los Angeles (arbitration testimony); *Balle v. Ross,* Nevada State Bar Proceeding (arbitration testimony); *Pintsopoulous v. WestPark Capital, et. al.*, FINRA Arbitration (arbitration testimony); *Carone v. Wooley*, Santa Barbara County Bar Association Fee Arbitration (arbitration testimony); *LegalForce v. Papiz*, JAMS Los Angeles (arbitration testimony); *Gateway Bank v. Metaxas*, JAMS San Francisco (arbitration testimony); *Joseph Aleem & Slovak v. Zaffuto*, Los Angeles County Bar Association Fee Arbitration (arbitration testimony); *In re Allyne L. Urick Trust*, Orange County Superior Court (trial testimony); *Cappello & Noel v. Rubin* (arbitration testimony); *Bertoia v. Payton*, Denver County Court (trial testimony); *Enenstein v. Hankey*, Los Angeles County Superior Court (trial testimony); *Thekkek v. Bird Marella*, Los Angeles County Bar Association Fee Arbitration (arbitration testimony); *Lieberg v. Kanter*, Riverside County Superior Court (trial testimony), *In re Hughes Family Trust*, Los Angeles County Superior Court (trial testimony), and *Linnet v. Law Offices of Beatrice Snyder* (arbitration testimony).

17.     I have also testified via affidavit or declaration in over one hundred other matters and have been deposed multiple times.

18.     Because I apply a conservative, court-approved methodology, I am retained by both plaintiffs and defendants. I am one of the few fee experts routinely engaged by both sides due to my consistent approach, regardless of which side I represent. I have even been retained by opposing parties in connection with the same

DECLARATION OF GRANT STIEFEL

litigation.[1]

19.     I regularly turn down engagements where I cannot support a party's position, including instances where I am asked to justify unreasonable fee requests or artificially discount valid billings.

20.     A complete list of the 160+ matters I have testified in as an expert is attached as **Exhibit B**.

21.     ***Training Clients on Attorney Fee Issues and Litigation Management***. I am a California State Bar approved continuing legal education (CLE) instructor and have lectured extensively on attorneys' fees to lawyers, judges, executives, and legal departments. I also provide training to in house counsel and legal departments on billing issues and legal cost strategies.

22.     ***Additional Expertise and Publications***. I am qualified as an attorney-client fee arbitrator with the State Bar of California's Attorney-Client Fee Arbitration Program and have completed the Los Angeles County Superior Court's Temporary Judge Training Program. I have also published articles in the legal and business media on attorneys' fees, billing practices, litigation management and managing outside counsel relationships, as described in my attached *c.v.*

23.     My analysis and opinions on billing practices in the legal profession have been cited in newspapers and government reports, including the New Jersey Office of State Comptroller's *Analysis of Legal Fees Paid by New Jersey Local Governments* (June 25, 2013). I have also participated in numerous seminars, conferences, and CLE courses on attorneys' fees and legal billing practices. Additionally, I regularly review new court opinions, practice guides, and other

---

[1] The *Brickman* class action serves as an illustrative example. I was initially retained by Defendant FitBit to provide an opinion on the reasonableness of Class Counsel's fee request. Following the approval of the class action settlement and the issuance of an order awarding attorneys' fees, I was subsequently retained by Class Counsel—with FitBit's knowledge and consent—in their dispute with local counsel regarding the allocation of the *Brickman* fees. *Brickman v. FitBit,* U.S.D.C. Northern District of California Case No. 3:15-cv-2077-JD.

DECLARATION OF GRANT STIEFEL

scholarship related to attorneys' fees.

24. ***Litigation Experience***. Before leaving private practice to become a full-time attorney fee consultant and auditor, I was a trial lawyer with two of the world's largest law firms.

25. From 2000 through 2004, I was a litigation associate in the Los Angeles office of Akin Gump Strauss Hauer & Feld, where I worked on complex, high-profile disputes including California's structured settlement litigation, the *Metabolife* dietary supplement litigation, and several large consumer class actions.

26. In 2005, I moved with a partner to the Los Angeles office of K&L Gates. Shortly thereafter, I was tasked to head up the firm's Toxic Tort Practice Group for Southern California and was lead counsel on hundreds of personal injury and wrongful death lawsuits with an aggregate settlement value of several billion dollars. Most of this high-value litigation was in the California Superior Court, where I supervised dozens of lawyers, paralegals, and staff. I also defended corporate clients in high stakes "bet the company" government investigations.

27. I was also responsible for overseeing teams of experienced trial lawyers across the country, in both their local jurisdictions and as *pro hac vice* trial counsel. As national coordinating/liaison counsel for multiple Fortune 500 companies, I managed local counsel and regularly reviewed, audited, and analyzed invoices from hundreds of firms. I therefore became familiar with timekeeping and hourly billing practices of lawyers and law firms from virtually every state. I am perhaps the only regularly testifying fee expert with more than a decade of experience at two global law firms.

28. ***Trial Experience***. I have first- and second-chaired approximately two dozen trials and secured favorable verdicts. My clients included Schneider Electric, Crane Co., World Wrestling Entertainment, Macquarie Bank, Samsung, Calgon Carbon Corporation, Black Entertainment Television, TransUnion, Kia Motors, Thane, Univar, and Ready Pac Produce. I have also represented smaller corporate

DECLARATION OF GRANT STIEFEL

clients and individuals (as both plaintiff and defendant) in matters that were resolved or dismissed prior to trial.

29.   ***Bar Membership and Court Admissions***.  I am an inactive member in good standing with the California State Bar and was admitted to practice on January 12, 2001. My state bar number is 212307, and I have no history of professional discipline. In addition to all the state courts of California, I have been admitted to the following courts: the United States Court of Appeals for the Ninth Circuit; the United States District Court for the Central District of California; the United States District Court for the Eastern District of California; the United States District Court for the Northern District of California; and the United States District Court for the Southern District of California.

30.   ***Legal Education***.  I received my *juris doctor* from the University of Southern California School of Law in May 2000, where I was awarded honors or high honors in thirteen (13) subjects. I was also selected to serve as a staff editor on the honors journal, *Southern California Interdisciplinary Law Journal*, and was elected by the student body to serve on the Student Bar Association for all three years, first as Class Representative for the 1L class (1997-98) and then as Vice-President (1998-2000).

31.   ***Undergraduate Education***. I graduated from the University of Southern California in May 1994 with a Bachelor of Arts in Psychology and Linguistics, where I was a National Merit Scholar, a USC Presidential Scholarship recipient, and was named to the Dean's List for the College of Letters, Arts, and Sciences.

DECLARATION OF GRANT STIEFEL

## MATERIALS REVIEWED AND METHODOLOGY

32.   Before preparing this declaration, I undertook a number of investigative steps to learn more about the underlying litigation and Plaintiffs' fee request, as follows:

a)  I communicated with Daniel Faustino, counsel for Defendants.

b)  I accessed and reviewed the California State Bar member database (*http://members.calbar.ca.gov/fal/MemberSearch/ QuickSearch*) to confirm the dates of admission to the California bar for Plaintiff's lawyers who worked on this matter.

c)  I reviewed the following materials relating to Plaintiff's fee motion:

i)  Plaintiff's Notice of Motion and Motion for Attorneys' Fees, filed February 21, 2025.

ii)  Declaration of Dan Stormer and Exhibits in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

iii)  Declaration of David Clay Washington in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

iv)  Declaration of Claudia Center in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

v)  Declaration of S. Lynn Martinez in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

vi)  Declaration of Anna Rivera in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

vii)  Declaration of W.B. in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

viii)  Declaration of Barrett S. Litt in support of Plaintiff's

Motion for Attorneys' Fees, filed February 21, 2025.

ix) Declaration of Michael Meuter in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

x) Declaration of Olu K. Orange in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

xi) Declaration of Shawna Parks in support of Plaintiff's Motion for Attorneys' Fees, filed February 21, 2025.

xii) Proposed Order, filed February 21, 2025.

d) I reviewed the following materials relating to this litigation:

i) Complaint, filed February 2, 2021.

ii) Answer to Complaint, filed July 16, 2021.

iii) First Amended Complaint, filed March 25, 2022.

iv) Answer to Amended Complaint, filed April 22, 2022.

v) Stipulated Protective Order, filed June 8, 2022.

vi) Minute Order, filed September 22, 2022.

vii) Motion for Partial Summary Judgment, dated September 1, 2023.

viii) Court Docket for Case No. 5:21-cv-00194-JGB-SP, accessed and reviewed on March 3, 2025.

33. Finally, I reviewed the surveys, databases, and legal fee matrices detailed in the following paragraphs. These sources are widely recognized and commonly relied upon by experts in this field. Regardless of which party I am testifying for, I apply a consistent, court-approved methodology.[2] Thus, my conclusions are not arbitrary but are the product of thorough analysis and careful consideration.

---

[2] This is why I have cited numerous cases in this declaration—to demonstrate that my conclusions are based on a sound methodology that has been approved by trial courts, both in cases where I served as an expert and in courts across various jurisdictions.

DECLARATION OF GRANT STIEFEL

34.     To analyze Plaintiff's fee request, I converted counsel's billing records into an electronic format using optical character recognition (OCR). This allowed me to efficiently analyze, sort, review, code, and search the 6,894 line-item billing entries. This methodology, which has been approved by courts in prior fee matters where I have testified, is the same process I use when auditing and analyzing billing records and invoices for my consulting (non-litigation) clients.

35.     I have not been provided with or reviewed the entire case file because an in-depth review of the file was not required to complete my analysis or to render the specific conclusions and opinions expressed herein. *See, e.g., Godwin v. World Healing Center Church, Inc.*, C.D. Cal. Case No. 8:21-cv-00555-JLS-DFM (October 20, 2021, Order Granting in Part Plaintiff's Motion for Attorney Fees) (overruling objections to Declarant's testimony and fee analysis because "Stiefel does not need knowledge of the underlying case to opine on counsel's billing statements; he need only have reviewed those statements and employed an appropriate and reliable methodology… The Court has reviewed Stiefel's work and finds no indicia of unreliability and takes no issue with Stiefel's methodology…").

36.     In offering expert opinions, I strive for consistency with judicial decisions that have addressed similar attorney fee and billing issues. In my declaration, I cite relevant federal and state case law—both reported and unpublished—as well as ethical opinions I have consulted, considered, or relied upon in forming my conclusions. I reference these authorities to provide context for my reasoning and to support the foundation of my opinions, not to offer legal conclusions, which are the province of the Court.

37.     While my opinions are informed by case law, they are grounded in years of practical, real-world experience and independent research specific to the issues addressed in this declaration. Over the past two decades, I have reviewed and audited tens of thousands of invoices from law firms of all sizes, across both routine litigation and major complex disputes. I have encountered nearly every variation of the attorney

12

DECLARATION OF GRANT STIEFEL

fee and billing issues described herein. Additionally, I have studied numerous treatises on legal fees, hourly billing rates for attorneys and paralegals, attorney fee awards, outside counsel management, and best practices for legal billing.

## HOURLY BILLING ANALYSIS

### Block Billing

38.     Around ten percent—693 hours—of Plaintiff's fee request was block-billed. Block billing "is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). The practice has been criticized in this district because block billing makes it 'impossible for the court to decipher how much time was spent on individual tasks and whether the time spent was reasonable.'" *Moofly Prods., LLC v. Favila*, No. CV 13-05866 SJO (PJWx), at *8-10 (C.D. Cal. Nov. 2, 2015).

39.     Moreover, according to the California State Bar's Bill Padding Advisory, block billing may "inadvertently or intentionally inflate the actual time a lawyer takes to complete the listed tasks." State Bar of California Arbitration Advisory 2016-02 (March 25, 2016) *Analysis of Potential Bill Padding and Other Billing Issues*, at *9.[3] The Bill Padding Advisory notes that "block billing has the potential of, among other things, camouflaging non-compensable tasks, many judges, fee arbitrators, and commentators regard its persistent and egregious use with suspicion, and some consider the practice a violation of Business and Profession

---

[3] A true and correct copy of the Bill Padding Advisory is attached hereto as **Exhibit C**. The California State Bar of California Committee on Mandatory Fee Arbitration's Advisory on Bill Padding was first promulgated in 2003 and is of the most useful and widely referenced authorities on the subject of reasonable billing practices. Over the past two decades, the Bill Padding Advisory has been cited favorably by state and federal courts. *See, e.g., See, e.g., Welch v. Metropolitan Life Ins. Co.* (9th Cir. 2007) 480 F.3d 942, 948; *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 5451411 at *5 (N.D. Cal. 2012); *Yeager v. Bowlin*, Civ. No. 2:08-102 WBS JFM (E.D. Cal. April 26, 2010 Order on Motion for Attorneys' Fees); *Ctr. for Healthcare Educ. & Research, Inc. v. Int'l Cong. for Joint Reconstruction, Inc.*, D076513 (Cal. Ct. App. Nov. 30, 2020); *United States ex rel. Mason v. Prism Autism Found.*, 3:19-cv-00043-W-BLM, at *12 (S.D. Cal. Oct. 6, 2022).

13

Code §6148(b)." *Id.*

40.    As a result, the trial courts have the "authority to reduce hours that are billed in block format." *Welch*, 480 F.3d at 948; *see also Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1223 (9th Cir.2010) (ruling that the district court did not abuse its discretion by reducing compensable hours by 30% for block billing). "Since block billing has the potential of, among other things, camouflaging non-compensable tasks, many judges, fee arbitrators, and commentators regard its persistent and egregious use with suspicion…" [Bill Padding Advisory, at *9].

41.    Concerns about block billing are not merely theoretical; they reflect a growing trend in which clients—and courts—demand more detailed billing descriptions and greater accountability from law firms. Having drafted, implemented, or reviewed billing and litigation management guidelines for numerous corporations and organizations, I am aware that, virtually without exception, all these guidelines prohibit block billing:

- **_Emory University_**: "Grouping multiple activities under a single time charge greater than one-tenth of an hour *('block billing') is not acceptable*…"

- **_Walmart_**: "Hours shown must accurately reflect the time spent on the described activity and must either be the exact amount of time or the exact time rounded up or down, as the case may be, to the nearest one-tenth of an hour. *Block billing will not be accepted*."

- **_Federal Deposit Insurance Corporation (FDIC)_**: "Time billed for each fee or expense should be identified separately. Do not combine different types of activities in one entry on the E-invoice. *"Block billing" of fees is not acceptable*…"

- **_Verizon Media_**: "…*does not allow block billing* (i.e., each entry should reflect a separate task and the amount of time spent on the task)…"

14

- ***New Jersey Office of the Attorney General***: "*Block billing— grouping multiple activities under a single time charge—will not be accepted*, and the State will not pay for any time recorded in a block fashion…"

- ***Blackstone Group***: "…invoices may be returned [for] *Block-billed charges*" and "'*block-billed' descriptions are not acceptable*…"

- ***Bayer***: "Tasks grouped together in a single block of time (no matter how small) *('blocked' or 'bundled' entries) will not be approved for payment*. Preparation time and time spent attending meetings, multiple depositions, hearings, etc., are each a separate task and should be separated by an individual time increment."

- ***City of Houston***: "*Block billing is unacceptable*. Each task and its corresponding time entry shall be identified separately."[4]

42.   While block billing is not objectionable *per se*, "it certainly does increase the risk that the trial court, in a reasonable exercise of its discretion, will discount a fee request." *Jaramillo v. Cnty. of Orange,* 200 Cal. App. 4th 811, 830 (2011); *see also Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315, 1325-26 (2008) ("block-billed time entries inflated with non-compensable hours destroy an attorney's credibility…").

43.   The Ninth Circuit recently reiterated that in this circuit, it is "*improper for the district court to grant in full an attorneys' fees request that was based largely on block billing...*" *Grouse River Outfitters, Ltd. v. Oracle Corp*., 848 F. App'x 238, at *245 (9th Cir. Feb. 26, 2021). The *Grouse River* court concluded that "[w]e have recognized that attorneys' fees awards can be reduced where a party block bills

---

[4] True and correct copies of all the billing guidelines referenced in this declaration are attached as **Exhibit D**.

DECLARATION OF GRANT STIEFEL

'because block billing makes it more difficult to determine how much time was spent on particular activities.'" *Id.*, at *245.

44.     In my own experience, which is supported by reference to numerous court opinions and the State Bar's Bill Padding Advisory, the most common discount for block-billing in the Ninth Circuit is twenty percent. *See, e.g., Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1053 (N.D. Cal. 2012) ("the court exercises its discretion to reduce the hours for these block-billed entries by twenty percent, the amount noted by the Ninth Circuit as the middle range for time increases that occur through block-billing"); *see also* Bill Padding Advisory, at *9 ("block billing hides accountability and may increase time by 10% to 30%").

45.     I have testified as a fee expert in numerous cases where the trial court applied a discount of twenty percent or more for block billing:

- ***Courthouse News Service v. Planet*, Case No. CV 11-08083 SJO (FFMx) (C.D. Cal.)**. In *Courthouse News Service*, using the same methodology I have used in this case, I identified nearly 2,000 block-billed entries in plaintiff's fee request that totaled more than $3.5 million in claimed fees. The Honorable S. James Otero, relying upon my analysis, agreed that "the 1,956 time entries in block-billed format must be reduced by twenty percent (20%)." [October 17, 2016 Order Granting in Part Plaintiff's Motion to Set Amount of Attorneys' Fees and Costs, at *10].

- ***McLaughlin v. Wells Fargo Bank, N.A.*, Case No. C 15-02904-WHA (N.D. Cal.)**. In *McLauglin*, the Honorable William Alsup discounted excessive individual block-billed work projects in a class action fee motion by as much as 75%. [March 15, 2017 Order re Plaintiff's Motions for Final Approval of Class Settlement and Fees, at *6]. Judge Alsup also applied a thirty percent discount to other block billed time "to account for other unreasonable charges

16

DECLARATION OF GRANT STIEFEL

potentially hidden within class counsel's block-billed and approximately described entries, which seem probable in light of the numerous inadequacies and red flags apparent even from said block-billed entries." *Id*. at *7.

- ***Drakeford v. Capital Benefit, Inc.*, Case No. 20-cv-04161-WHO (N.D. Cal.)**. In *Drakeford*, I determined that a portion of plaintiff's fee request was block-billed. The Honorable William H. Orrick noted that plaintiff's block billing "hampered" the court's "ability to fully address defendant's concerns… about unnecessary or improperly billed hours." [September 2, 2022 Order on Motion for Attorneys' Fees and Costs, at *4-5]. Judge Orrick found that although "the majority of the hours… do not appear to be unreasonable *per se*, given the block billing it is hard to fully comprehend exactly how those hours were spent" and applied a twenty percent discount to the block-billed time. *Id.* at *5.

- ***Brickman v. FitBit*, Case No. 3:15-cv-2077-JD (N.D. Cal.)**. In *Brickman*, the Honorable James Donato approved my recommended twenty percent discount for block billing. [March 20, 2020 Order Granting Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Incentive Compensation, at *1].

- ***Seneman, LLC v. Corona Industrial JV, LLC*, Case No. RIC1904918 (Riverside County Superior Court)**. In *Seneman*, the Riverside County trial court applied a twenty percent discount to entries I identified as block billed because "counsel's hours… spent on attending hearings and communicating with opposing counsel… would be lumped together with 'case analysis and work product'"). [January 3, 2024 Notice of Ruling on Defendant Corona Industrial JV, LLC's Motion for Attorneys' Fees, at *9].

17

DECLARATION OF GRANT STIEFEL

46.    Although I typically recommend a conservative discount of twenty percent for block billing, some courts have applied discounts of fifty percent or more. *See, e.g., Zest IP Holdings, LLC v. Implant Direct MFG., LLC,* Case No. 10-CV-0541-GPC (WVG), 2014 U.S. Dist. LEXIS 167563 at *14 (S.D. Cal. Dec. 3, 2014) ("courts have used their discretion to strike block-billed time entirely or reduce such time by 50%"); *In re Charis Hosp., LLC*, 360 B.R. 190, 200 (Bankr. M.D. La. 2007) (court disallowed 50% of block billed time entries); *In re Teraforce Tech. Corp.*, 347 B.R 838, 857 (Bankr. N.D.Tex. 2006) (court disallowed 50% of block billed time entries).

47.    Attached as **Exhibit E** is a report I prepared that segregates the 332 block-billed entries from Plaintiff's fee request so that an appropriate discount may be applied to only "those hours that were actually billed in block format", which is the methodology articulated by the Ninth Circuit in *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). *See also Nat'l Res. Def. Council v. Locke*, 771 F. Supp. 2d 1203, 1214 (N.D. Cal. 2011) (noting that a reduction in hours for block billing "must be tailored to those hours that were actually billed in block format").

48.    I believe that the entries in Exhibit E are "block-billed" as that term is commonly understood in the legal industry and by reputable fee auditors, and as used in the court opinions and Bill Padding Advisory cited herein. Because I take a conservative approach to my analysis, I have excluded any block-billed entries of thirty minutes or less from this calculation.

49.    In total, Plaintiff's counsel block-billed **694 hours**. At counsel's requested hourly rates, these block-billed fees total **$446,450**. Assuming a block-billing discount rate of twenty percent, the total recommended lodestar reduction would be a conservative deduction of just 139 hours.

DECLARATION OF GRANT STIEFEL

**Non-Billable Clerical and Secretarial Work**

50.    Plaintiffs' counsel also billed **259 hours** and claims **$76,011** in fees for clerical and secretarial work, including calendaring, filing documents with the court, serving documents, preparing proofs of service, internal filing and organization, downloading and uploading documents, proofreading, paying vendors, negotiating co-counsel agreements, preparing proofs of service, assembling binders, making chambers copies, and formatting pleadings. The following entries are illustrative:

| DATE | NAME | DESCRIPTION | HOURS | RATE | FEE |
| --- | --- | --- | --- | --- | --- |
| 02/02/2021 | Lindsay Appell | Proofread complaint | 2.00 | $420.00 | $840.00 |
| 02/04/2021 | Mayeli Soto | Calendering future filing dates | 0.40 | $235.00 | $94.00 |
| 02/16/2021 | Mayeli Soto | Prepared POS for service | 1.30 | $235.00 | $305.50 |
| 03/17/2021 | Mayeli Soto | Calendared. | 0.10 | $235.00 | $23.50 |
| 03/25/2021 | Mayeli Soto | Updating case dockets | 0.50 | $235.00 | $117.50 |
| 04/12/2021 | Mayeli Soto | Prepped documents for service to FedEx. | 0.50 | $235.00 | $117.50 |
| 08/26/2021 | Galindo, Tami | Outlook/calendaring | 0.10 | $325.00 | $32.50 |
| 01/27/2022 | Galindo, Tami | Outlooks/calendaring | 0.20 | $325.00 | $65.00 |
| 02/28/2022 | Beverly Familar | download ECF and distribute to team | 0.10 | $235.00 | $23.50 |
| 05/03/2022 | Patricia Mange | Update County of Riverside new counsel in contacts in Sharepoint | 0.10 | $235.00 | $23.50 |
| 10/27/2022 | Galindo, Tami | many Outlooks/calendaring | 0.60 | $325.00 | $195.00 |
| 03/08/2023 | Patricia Mange | Download transcript and exhibits from Dropbox | 0.20 | $235.00 | $47.00 |
| 06/30/2023 | Patricia Mange | Contact Network Deposition Services to schedule depos, email notices to Network Deposition | 0.40 | $235.00 | $94.00 |
| 07/27/2023 | Galindo, Tami | prepare efiled document/Outlook/calendaring | 0.50 | $325.00 | $162.50 |
| 03/25/2024 | Beverly Familar | arrange for courtesy copies to judge's chamber w/ Nationwide | 0.40 | $235.00 | $94.00 |

51.    None of this is properly billable work. *See, e.g., Hernandez v. Starbucks Coffee Co.*, H042848, at *31 (Cal. Ct. App. June 20, 2018) ("Calendaring, preparing proofs of service, internal filing, preparing binders for a hearing, and scanning are examples of tasks that have been found to be purely clerical and thus noncompensable"); *Keovongsa v. Colvin*, Case No.: 3:16-CV-00842-BTM-NLS, at *5 (S.D. Cal. Jan. 28, 2019) ("Courts have routinely found that time spent on electronically filing documents is not compensable…"); *Nagesh v. BMW of N. Am.,*

DECLARATION OF GRANT STIEFEL

*LLC*, No. 2:18-cv-00839-KJM-JDP, at \*4 (E.D. Cal. Mar. 18, 2021) ("The Ninth Circuit and district courts within this Circuit have indeed refused to award fees at hourly rates for filing, copying, scanning, organizing documents, and similar tasks"); *Smith v. A-Check Am. Inc.*, EDCV 16-00174-VAP (KKx), at \*24 (C.D. Cal. July 18, 2017) (charges for "proofreading, making copies, uploading data to a server, formatting documents, and managing databases" are "improper" and should be excluded from a lodestar calculation); *Miller v. Schmitz*, No. 1:12-cv-00137-LJO-SAB, 2017 U.S. Dist. LEXIS 21513 at \*12 (E.D. Cal. Feb. 15, 2017) ("receipt of automatic CM/ECF emails… is entirely clerical in nature [so] hours spent reviewing automatic email notifications is excluded as clerical work not compensable at an attorney rate"); *Arizona Dream Act Coalition v. Brewer*, Dist. Court, Case No. CV 12-02546-PHX-DGC, (D. Ariz. Dec. 10, 2018) ("Courts have previously found calendaring activities, scheduling depositions, bates labeling documents, reviewing court notices, communicating with court staff, scheduling, informing a client that a document has been filed, and informing a client of a hearing date to be clerical")

52.     No less an authority than the U.S. Supreme Court has determined that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Thus, charges for clerical and secretarial work are not properly part of an award of attorneys' fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority"); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) ("time spent on clerical matters should not have been included in the attorneys' fee award").

53.     In my experience, which is confirmed by reference to outside counsel billing guidelines, informed clients refuse to pay hourly fees for this sort of clerical or secretarial work, regardless of who performs these tasks:

DECLARATION OF GRANT STIEFEL

- ***Johnson & Johnson***. "Non-Billable Fees" include "Administrative and/or clerical work" which is subject to a "100% adjustment."

- ***Bayer***. "Examples of secretarial/administrative tasks (non-compensable)" include "Billing or bill auditing tasks; Travel arrangements; Conflict checks; Index and organize file material; Tab file material; Routine copying, collating, filing, faxing or binding; Retrieving documents from the files; Date and bates-stamp; Create and organize folders; Organize and index for archives; Update internal status lists; File/refile/log/receive/assemble/index/create/closing; Inventory documents; Telephone calls or correspondence for status to vendors; Process vendor bills; Deposit checks; Word processing, printing."

- ***University of Rhode Island***. "Work that is clerical or secretarial in nature… will not be reimbursed by the University."

- ***University of Missouri***. "Charges for… Secretarial, word-processing, proofreading, or other clerical services… will not be permitted."

- ***Coca-Cola***. "The following categories of expenses will not be reimbursed… Clerical tasks, including: Word processing, Docketing and calendaring, Document indexing, Filing documents, updating files…"

- ***State of Louisiana***. "Secretarial and clerical activities are **not** billable… Examples include: Mail Handling, New File set up, Calendar maintenance, Transcribing, Copying, Posting, Faxing, Data Entry, Routine Scheduling, Enclosure or transmittal letters, Simple letters to clerk of court. File Management, examples include: Inserting/retrieving documents, File organization,

DECLARATION OF GRANT STIEFEL

Stamping documents, Assembling materials, Tabbing sub-files, Database maintenance."

- ***Rio Tinto***. "Administrative, clerical and secretarial tasks [are] Non-Compensable."

54.    Attached as **Exhibit F** is a report I prepared that shows the 309 line-item entries for non-compensable clerical and secretarial work. I have excluded these non-compensable tasks from my proposed fee model.

## Vague Billing Entries

55.    My line-by-line analysis of counsel's billing entries revealed a handful of cryptic, vague or redacted time entries that fail to adequately describe the work being performed. This includes entries for research and document review that fails to explain what was being researched or reviewed, or entries for calls or meetings that fail to describe the purpose or reason for the communication. Entries like "calls – 1.4 hours", "research/review – 1.2 hours", "team meeting – 1.0 hours" or "document review – 0.9 hours" are simply too vague to support an award of fees.

56.    A sampling of these vague entries:

| DATE | NAME | DESCRIPTION | HOURS | RATE | FEE |
|------|------|-------------|-------|------|-----|
| 06/14/2021 | Shanbhag, Shaleen | conf with cocounsel | 0.90 | $850.00 | $765.00 |
| 01/27/2022 | Shanbhag, Shaleen | cocounsel mtg | 2.00 | $850.00 | $1,700.00 |
| 05/03/2022 | Washington, David | Document review | 0.90 | $800.00 | $720.00 |
| 07/20/2022 | Washington, David | Document review | 1.30 | $800.00 | $1,040.00 |
| 03/08/2023 | Stormer, Dan | calls | 1.40 | $1,550.00 | $2,170.00 |
| 03/24/2023 | Stormer, Dan | expert issues | 1.60 | $1,550.00 | $2,480.00 |
| 02/07/2024 | Stormer, Dan | issues re: enforcement | 0.90 | $1,550.00 | $1,395.00 |
| 06/17/2024 | Stormer, Dan | research/review | 1.20 | $1,550.00 | $1,860.00 |

57.    Court opinions routinely hold that fees should not be awarded for work descriptions like these that lack sufficient detail: "Time regarding research and meetings… without indication of what the research and meeting were about … will be deducted." *Clark v. Shop24 Glob. LLC*, No. 2:12-cv-802, at *8 (S.D. Ohio July 8, 2016); *see also Wilder v. Bernstein*, No. 78 Civ. 957 (RJW), 1998 WL 323492, at *6

(S.D.N.Y. June 17, 1998) ("entries that fail to identify the subject matter of the documents reviewed or the topic of conversation in a telephone conference [are] unacceptable"); *In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (time entries in which "no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed" are "not adequately documented" and are not compensable); *Hill v. Harrington*, 1:18-CV-05592, at *11 (N.D. Ill. Sep. 28, 2024) ("entries stating merely "discuss case and strategy" with another attorney, or "legal research," without more detail are too vague.")

58. At least one other district court has excluded Attorney Stormer's fees for precisely this reason, noting that "Mr. Stormer's work [descriptions] use extremely broad terms, such as 'calls', 'strategy', and 'review issues'" that are "insufficient to enable the Court to evaluate the reasonableness of time spent." *Edmo v. Idaho Dep't. of Corr.*, 679 F. Supp. 3d 993, 1011 (D. Idaho 2022).[5] The Hon. B. Lynn Winmill concluded that "Those lean entries provide no real sense of what Mr. Stormer was doing, who he was conferring with, or what those conversations were about. Nor do the surrounding entries or the docket provide clarity." The court "therefore exclude[d] a total of 34 hours from the lodestar calculation due to vagueness." *Id.* Many of Mr. Stormer's billing entries in this case are similarly vague.

59. Outside counsel billing guidelines consistently provide that vague or insufficiently detailed billing entries like these not reimbursable:

- ***Verus Underwriting Managers***. "Vague time entries will not be paid until sufficiently detailed information has been provided for them." [Verus Billing Guidelines, at *8].

- ***Johnson & Johnson***. "Vague descriptions" of work are considered to be "Non-Billable Fees" and are subject to a "100% adjustment." [Johnson & Johnson Billing Guidelines, at *4]**.**

---

[5] A copy of this order is attached as **Exhibit G**.

DECLARATION OF GRANT STIEFEL

- ***Bayer***. "Vague entries are not acceptable, descriptions must be specific. Each entry shall stand on its own. (Telephone conversations and review of correspondence shall list the identity of the other party and the purpose of the call or letter. Preparation shall state what was prepared. A document prepared or reviewed shall be identified so that a person unfamiliar with the matter can find the document. Do not use uncommon or internal acronyms or initials without explanation." [Bayer Billing Guidelines, at *8].

- ***FDIC***. "Regarding vagueness, billing entries are unacceptably vague when they do not identify the particular legal issue, document, purpose of call/email/meeting, etc. or service that they support. The FDIC will reject invoices with block billing or that are unacceptably vague, delaying ultimate payment to outside counsel." [FDIC Outside Counsel Deskbook, at *46].

- ***University of California***. "UC will not pay for… Vague line item descriptions like 'attend meeting', 'participate in client call', 'trial preparation', 'research', etc." [University of California Office of General Counsel Billing Guidelines, at *2].

60.    Included in these vague billing entries are around 50 hours of work that is described only as "deposition preparation", "mediation preparation", "trial preparation", and even "preparation for trial prep." According to many trial courts, these are insufficient descriptions of work, at least a fee-shifting context, where both the Court and opponent must be allowed an opportunity to assess the reasonableness of the fee request. *See, e.g., Supinger v. Virginia*, No. 6:15-cv-00017, at *5 (W.D. Va. Apr. 2, 2019) ("vague entries such as… 'prepare for depositions'… do not justify the fee award Plaintiff seeks"); *Trevino v. U.S. Bank Tr. (In re Trevino)*, No. 10-70594, at *30 (Bankr. S.D. Tex. Feb. 9, 2023) ("Large billing entries

24

DECLARATION OF GRANT STIEFEL

with vague descriptions such as 'preparation for hearing' hinders the Court's ability to assess the reasonableness of these fees"); *Adamik v. Motyka*, No. 12 C 3810, at *16 (N.D. Ill. July 25, 2018) ("The Court also strikes as overly vague" hours billed to "'Prepare for deposition'").

61.   Outside counsel billing guidelines commonly prohibit vague phrases like "trial preparation" or "prepare for deposition":

- ***Philadelphia Insurance Companies***. "The use of generic descriptions such as… 'prepare for' [and] 'trial preparation' should not be used." [Philadelphia Insurance Companies' Billing Guidelines, at *5].

- ***Bayer***. "Trial preparation" is a "Vague Entry" that is "not acceptable." [Bayer Billing Guidelines, at *8-9]. "Descriptions must be specific." *Id.* at *8**.**

- ***State of New Jersey***. "prepare for meeting" is an "incomplete or vague" billing entry that is "unacceptable." [New Jersey Outside Counsel Guidelines (2015), at *17].

- ***University of California***. "Generic descriptions such as… Trial Preparation [or] oral argument preparation… without further detail, are not acceptable." [University of California Billing Guidelines, at *8.]

- ***Coca-Cola***. "Coca-Cola HBC will not pay for descriptions that lack specificity, including… trial preparation." [Coca-Cola Billing Guidelines, at *13].

- ***University of Rhode Island***. "Each time entry must be specific, detailing the date, specific action taken, and subject matter." [URI Billing Guidelines, at *5].

DECLARATION OF GRANT STIEFEL

62.    I have prepared a report, attached as **Exhibit H**, that shows the 180 vague line-item entries by Plaintiff's counsel, which total **206 hours**. In my opinion, these billing entries are unacceptably vague and would not be acceptable to a paying client, so I recommend that this time be excluded from any award of attorneys' fees.

**Excessive Conferencing Time**

63.    Plaintiff's counsel billed an extraordinary **1,641 hours**—27% of the total time billed—on internal discussions alone. This represents an exceptionally high percentage of internal conferencing and is equivalent to nearly *one year* of full-time billable work. Plaintiff seeks **$1,203,036** in fees for this time, or $1,443,643 with the requested multiplier.

64.    Attached as **Exhibit I** is a report I prepared detailing all 2,846 line-item billing entries related to internal conferences or communications among Plaintiff's counsel. My calculation includes all interactions between attorneys from Hadsell Stormer, Barajas & Rivera, DREDF, and DRC, encompassing conferencing, discussions, emails, meetings, internal memos (both writing and reviewing), caucusing, debriefing, and general collaboration.

65.    In addition to this internal conferencing, Plaintiff's counsel billed hundreds of hours for "external" communications with Plaintiff, parents, guardians, vendors, witnesses, experts, and court staff. These hours are separate from the 1,641 hours allocated to internal discussions, and are not reflected in Exhibit I. (I have not recommended a separate deduction to this time).

66.    The extent of internal conferencing is excessive. Nearly 200 hours were recorded under vague descriptions such as "co-counsel call," "litigation team meeting," or "strategy meeting," with no further details on the topics discussed. Such vague entries prevent meaningful evaluation, and in my experience, no reasonable client would pay for hundreds of hours of unexplained conferencing.

67.    Plaintiff's counsel also logged excessively long meetings and discussions that seem disproportionate to the work described. For example, on

DECLARATION OF GRANT STIEFEL

October 27, 2022, Meeth Soni and M. Barajas billed five hours for a "telephone conference" regarding "experts and discovery requests/responses." Additionally, timekeepers Malhar Shah, Beverly Familiar, Melinda Bird, Lindsey Appell, and Patricia Mange frequently billed one to two hours for "check-ins" with colleagues, with Ms. Mange recording a 3.2-hour "check-in" on July 6, 2023. In my experience, it is highly unusual—if not unheard of—for attorneys and paralegals to bill significant time, or any time, merely to "check in" on what others are doing.

68. Counsel also devoted an excessive amount of time—approximately 263 hours—to drafting, sending, and reviewing internal emails and memoranda, resulting in a claimed fee of $157,286.

69. District courts have concluded that "attorneys should work independently, without the incessant 'conferring' that so often forms a major part of many fee petitions. While some intraoffice conferences may be necessary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given." *In re Amatex Corp.*, 70 B.R. 624, 626 (E.D. Pa. 1985) (clients should not bear the cost of compensating each attorney present at an intra-office conference unless counsel can show that the client benefitted from each attorney's special area of expertise and that the conference was essential to efficient management of the case); *Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-cv-02737-KJM-EFB, 2013 WL 4828594 at *3 (E.D. Cal Sept. 9, 2013) ("While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings").

70. Here, much of the inflated conferencing time can be attributed to the number of timekeepers who billed time on this case. As the California State Bar's Bill Padding Advisory has noted, "the more timekeepers on a case, the higher the bill will be." State Bar Bill Padding Advisory, at *5. Here, there were **twenty-two** lawyers and paralegals from **four** law firms, and the large number of billers resulted in inflated conferencing time. *See, e.g., Ace Limited v. Cigna Corporation*, 00 Civ. 9423 (WK),

27

DECLARATION OF GRANT STIEFEL

at *1 (S.D.N.Y. Oct. 12, 2001) ("It is well-recognized that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases… Obviously, more lawyers leads to more 'conference' time as well as to a certain amount of repetition or 'learning curve' billing which should not be compensable").

71. Courts regularly "reduce[] fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) (reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan.4, 2007) ("Claiming a disproportionate number of hours for communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate").

72. Particularly in a fee-shifting context, courts will discount fee requests for "entries [that] involve internal conferences between multiple attorneys" within the same firm, as "the Court wishes to avoid double billing for the same meeting." *Moofly Prods.,* 2015 U.S. Dist. LEXIS 148399, at *7-8); *In re Office Prods. of Am., Inc.*, 136 B.R. 946, 977 (Bankr. W.D. Tex. 1992) ("Even when an intraoffice conference is justified, only one attorney may charge for it unless the necessity for each attorney's participation is explained").

73. In previous cases where I have observed this level of internal conferencing, trial courts have consistently applied significant reductions in billed hours and fees:

- ***Jang v. County of Los Angeles*, Superior Court for the County of Los Angeles, Case No. BC 587400**. In *Jang*, I calculated that 22 percent of all time billed was attributed to internal attorney conferencing. The trial court (Hon. Jon R. Takasugi) applied a "<u>50% deduction to the time billed for internal attorney conferencing</u>."

DECLARATION OF GRANT STIEFEL

[January 2, 2025 Order on Motion for Attorneys' Fees, at *6].

- ***Godwin v. World Healing Center Church, Inc.*, C.D. Cal. Case No. 8:21-cv-00555-JLS-DFM**, In *Godwin*, my analysis showed that forty percent of all time billed was for an internal conference or communication. Judge Staton observed that "nearly every entry for internal conferencing or communication is duplicate or triplicate, and nearly every entry is an unreasonable amount of time for the task performed," and reduced the amount of compensable conferencing time by 87 percent). [October 20, 2021 Order on Motion for Attorney Fees, at *6].

- ***MMM Holdings v. Reich*, Superior Court for the County of Orange Case No. 30-2015-00822123-CU-BT-CJC**. My analysis showed that 28 percent of all time billed was for internal conferencing. The trial court (Hon. Martha K. Gooding) held that "the amount of 'conference' time between and among counsel and client appears excessive" and warranted "a downward adjustment in the fees to reflect these unreasonable billings," effectively discounting 100% of internal conferencing time. [August 14, 2018 Order on Attorneys' Fees, at * 2].

- ***Brickman v. FitBit*, N.D. Cal. Case No. 3:15-cv-2077-JD**. In *Brickman*, I calculated that 35 percent of all time billed was for internal communications among class counsel. Judge Donato discounted the attorney conferencing time by 45 percent. [March 20, 2020 Award on Motion for Attorneys' Fees, at *3].

74.    I recommend a 50% reduction in the hours and fees attributed to internal attorney conferencing. As noted in *Kathrens v. Bernhardt*, 505 F. Supp. 3d 1085, 1094 (D. Or. 2020), "the best way to address excessive conferencing is to take a percent reduction of time billed that was devoted to conferencing." My proposed

29

DECLARATION OF GRANT STIEFEL

reduction is conservative, especially compared to the steeper cuts imposed by courts in similar cases. Even after applying this adjustment, Plaintiff's counsel would still be credited with over 800 hours for internal case discussions.

### Excessive Time to Prepare for Summary Judgment Motion

75. My line-by-line review of counsel's billing records revealed that counsel billed an inordinate amount of time to prepare for the hearing on Plaintiff's Motion for Partial Summary Judgment. Between September 11, 2023 and October 12, 2023, associate attorney Malhar Shah billed 122 hours to "Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited":

| DATE | NAME | DESCRIPTION | HOURS | RATE | FEE |
|---|---|---|---|---|---|
| 09/11/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 6.10 | $575.00 | $3,507.50 |
| 09/12/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 7.50 | $575.00 | $4,312.50 |
| 09/14/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 9.30 | $575.00 | $5,347.50 |
| 09/18/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 5.10 | $575.00 | $2,932.50 |
| 09/19/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 3.90 | $575.00 | $2,242.50 |
| 10/03/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 9.10 | $575.00 | $5,232.50 |
| 10/04/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 7.80 | $575.00 | $4,485.00 |
| 10/05/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 6.50 | $575.00 | $3,737.50 |
| 10/06/2023 | Malhar Shah | Prepared to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 8.50 | $575.00 | $4,887.50 |
| 10/07/2023 | Malhar Shah | Prepared to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 9.80 | $575.00 | $5,635.00 |
| 10/08/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 5.30 | $575.00 | $3,047.50 |
| 10/09/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 11.00 | $575.00 | $6,325.00 |
| 10/10/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited. | 11.00 | $575.00 | $6,325.00 |

DECLARATION OF GRANT STIEFEL

| 10/11/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited (8.8); participate in moot court and confer with Meeth Soni, Leah Kang and Stephen Peters re MSJ argument (1.6) | 10.40 | $575.00 | $5,980.00 |
| 10/12/2023 | Malhar Shah | Prepare to argue MSJ by reviewing and reading all cited cases, briefs, and documents and reports cited, including by participating in moot court | 10.60 | $575.00 | $6,095.00 |

76. This is an excessive amount of time to prepare for oral argument, especially given that Mr. Shah had already spent *several weeks* of full-time billable work researching and reviewing cited cases while drafting the motion for partial summary judgment. In total, Plaintiff's counsel billed approximately **289 hours** for researching and drafting the motion, plus an additional **135 hours** for oral argument preparation—which involved at least six timekeepers participating in a "moot court."[6] At the requested billing rates, Plaintiff seeks $251,628 for this single motion.

77. I recommend a 75 percent discount to the 135 hours that counsel billed to prepare for argument on the motion for partial summary judgment; counsel would still be left with 34 hours of "prep" time, which is nearly one week of full-time billable work. This is still a generous amount of time to prepare to argue a single motion, particularly as I have not recommended a separate discount to the nearly *three hundred hours* that Mr. Shah and his colleagues billed to prepare the motion itself.

78. I recommend a 75% reduction in the 135 hours billed for oral argument preparation on the motion for partial summary judgment. Even with this adjustment, counsel would still be credited with a generous 34 hours—nearly a full week of billable work—to prepare to argue a single motion. Notably, I have not recommended any reductions to the nearly 300 hours that Mr. Shah and his colleagues billed for drafting the motion itself, so I believe this is a conservative discount.

---

[6] Attached as **Exhibit J** is a report I prepared that shows the time billed by Plaintiff's counsel to prepare the partial motion for summary judgment. Entries to "prepare to argue MSJ" are shown in **bold text**.

31

**HOURLY RATE ANALYSIS**

79.   The California Supreme Court has determined that for purposes of lodestar calculations in fee awards, "the reasonable hourly rate is that prevailing in the community for similar work." *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1085 (2000). The goal is to "fix the fee at the fair market value for the legal services provided" and to "anchor… the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *Id.* (emphasis added).

80.   While I recognize that Los Angeles rates are certainly relevant to determining a reasonable hourly rate for work in the Central District of California, so are the rates in Riverside County, which is *also* in the Central District.

81.   Plaintiff resides in Riverside County. Defendant is in Riverside County. The relevant acts occurred in Riverside County. Defense counsel is in Riverside County. *This Court* is in Riverside County. These factors suggest to me that hourly rates in Riverside County are highly relevant to determining a reasonable lodestar award. Thus, for the purposes of this analysis, I have used ***Riverside*** rates as the starting point for determining a reasonable hourly rate.

82.   In fee-shifting cases, courts award hourly rates that are consistent with rates that other attorneys of comparable skill, experience, and reputation in the relevant legal marketplace would charge for performing similar work. A reasonable hourly rate is not the highest hourly rate that the market will bear, ***nor is it necessarily the highest rate that a lawyer has previously been paid or awarded***. *See Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) ("hourly rates are to be adequate to competent counsel and computed according to the prevailing market rates in the relevant community; nevertheless, the 'measure' is not the rates which 'lions at the bar' may command").

83.   I am aware that Plaintiff's counsel has previously been awarded comparable hourly rates by other courts—although none of these orders were

DECLARATION OF GRANT STIEFEL

attached to Plaintiff's fee motion or counsel's supporting declarations—just as I am aware that the Central District of California includes both Los Angeles and Riverside Counties, which are two very different legal markets, at least in terms of hourly rates.

84.     There is, of course, no magic formula or algorithm for calculating a reasonable hourly rate, and I am mindful that "the trial court is in the best position to determine the reasonableness of the hourly rate of an attorney appearing before the court and the value of the attorney's professional services." *Cordero-Sacks v. Housing Authority of City of Los Angeles*, 200 Cal.App.4th 1267, 1286 (2011).

85.     Although I am testifying "for" Defendant, I do not believe that my rate analysis would be different had I been retained by Plaintiff's counsel, as evidenced by my testimony in recent trials in Riverside Superior Court. In these cases, regardless of whether I was testifying for Plaintiff or Defendant, it was consistently my testimony that reasonable hourly rates for experienced litigation partners in the Riverside legal market were in the $300-$650 per hour range.

### Recent Fee Awards in Riverside County

86.     Last year, I testified in a bench trial in Department 7 of Riverside County Superior Court (Hon. O.G. Magno) that $300 per hour was a reasonable hourly rate for my client, a Riverside County litigator with over forty years of experience. Judge Magno's order noted my "vast experience as an attorney and attorney fees expert" and found my testimony on reasonable rates for Riverside County to be "noncontroversial and accepted by the court." *Lieberg Oberhansley LLP v. Kanter, et al.*, Case # RIC1812773 [August 14, 2024 Order].

87.     Judge Magno agreed that $300 per hour was reasonable, and my client was awarded 100 percent of the fees he sought as damages.

88.     I also testified as the defense expert in *Miller v. Desert Community College Dist.* (Case # PSC1904248), a wrongful termination claim where plaintiff's lawyer sought partner rates of $800-$1,000 per hour.

DECLARATION OF GRANT STIEFEL

89.    The trial court found these rates to be "excessive" because "no justification has been provided to support hourly billing rates of up to $1,000 and $800 for partners" in Riverside County. [Order on Motion for Attorneys' Fees, April 3, 2023, at *9].[7] The court concluded that while "counsel is clearly very experienced… their stated billing rates are excessive and arbitrary [and] the rates for Plaintiff's counsel should be reduced." *Id.* Judge Bustamente found my declaration to be "well-reasoned" and adopted my recommended rates, which were "fair and reasonable" for Riverside County:

- $600 per hour for partners.
- $250 to $450 per hour for associates.
- $100 per hour for paralegals.

90.    I was the plaintiff's fee expert in another recent Riverside County case, *Seneman v. Corona Industrial JV, LLC*, Case No. RIC1904918, a complex contract dispute where thirty-eight witnesses were deposed before trial. Judge Carol Green awarded my recommended rates, which she called "reasonable and within the realm of what is normal." [Exhibit A to Notice of Ruling, January 3, 2024, at *8].[8]

- $475 per hour for 29th and 23rd year attorneys.
- $345-425/hour for an 11th year attorney.
- $350/hour for a 4th year attorney.

91.    Other recent orders confirm that Plaintiff's requested rates are excessive for the Riverside market:

- *Delatorre v. General Motors LLC*, CVRI2200276 (Hon. O.G. Magno, Riverside County Superior Court): "**hourly rates of... $595 [and] $610 do not appear reasonable for Riverside County** [and] the rates awarded in counties other than Riverside

---

[7] A true and correct copy of this order is attached hereto as **Exhibit K**.

[8] A true and correct copy of this order is attached hereto as **Exhibit L.**

DECLARATION OF GRANT STIEFEL

are not particularly relevant. ***Rates awarded in Riverside County range from $200 to $550/hour***." Ruling on Motion for Attorneys' Fees, April 30, 2024 Tentative.[9]

- *Watson v. Subaru of America*, CVRI2300774 (Hon. Christopher Harmon, Riverside County Superior Court): "***Plaintiff's counsel's rate is $460.00 an hour***. The amount sought does not appear to be excessive. Plaintiff's counsel has been practicing for over 11 years and runs his own practice. […] ***The rate sought appears to be in line with the rate billed in the local community***." Tentative Ruling on Motion for Attorneys' Fees, May 9, 2024.

- *Mena v. 3711 West Balboa Homeowner's Ass'n,* 20-01146344 (Hon. Harold Hopp, Riverside County Superior Court): "Plaintiffs have not met their burden of showing that $495 per hour is a rate consistent with the community***. Thus, the hourly rate is reduced to $450 per hour***." Tentative Ruling on Motion for Attorneys' Fees, May 3, 2024.

- *Doe v. Damron*, CVPS1900002 (Hon. Manny Bustamente, Riverside County Superior Court): "Based on this Court's experience, ***the prevailing rates in Riverside County for paralegals ranges from $150-$200 and $300-$500 for attorneys,*** depending on the level of skill and experience." Tentative Ruling on Motion for Attorneys' Fees, March 16, 2024.

---

[9] True and correct copies of the tentative orders from the cases cited in this paragraph, which I downloaded from *tentativeruilings.org*, are attached hereto as **Exhibit M**.

DECLARATION OF GRANT STIEFEL

- *American CNA Registry, LLC v. CaliforniaMagnolia Convalescent Hospital, Inc.*, CVRI2000575 (Hon. Irma Asberry, Riverside County Superior Court): "The amount of fees appears a little excessive in consideration of the rate charged in Riverside County for similar work. Accordingly, ***the court reduces the hourly rates as follows, which amounts the court finds reasonable… [for an attorney with] 15 years' experience… $475/hour***." Tentative Ruling on Motion for Attorneys' Fees, February 22, 2024.

- *Majestic Asset Management LLC v. Pappas*, RIC1213939 (Hon. Eric Keen, Riverside County Superior Court): "***The hourly rate [of $450 for a 38-year lawyer] is comparable to the prevailing rates for attorneys of similar experience in Riverside County…***" Tentative Ruling on Motion for Attorneys' Fees, January 23, 2024.

92.     Recent appellate opinions confirm that the rates typically awarded for work in Riverside County—as noted and approved by the Court of Appeals—are far lower than the rates sought by Plaintiff's counsel:

- *Jacobs v. Am. Honda Motor Co.*, No. G062739 (Cal. Ct. App. Dec. 8, 2023). In *Jacobs*, the Court of Appeals upheld the trial court's determination that a requested rate of $675 per hour by an eleventh-year sole practitioner was "high for Riverside." *Id.* at *6. Instead, the trial court "awarded fees at a reduced ***hourly rate of $450***." *Id.* In that case, like this one, the fee-seeking party had only submitted "court-approved hourly rates awarded in unrelated actions in the Los Angeles and Orange County Superior Courts" and "did not include evidence of the

DECLARATION OF GRANT STIEFEL

prevailing hourly rates in Riverside County." *Id.* at *5-6.[10]

- *Kinney v. City of Corona*, No. E079840 (Cal. Ct. App. Dec. 29, 2023). In *Kinney*, the trial court determined that hourly rates of $550 and $495 were "unreasonably high" for eleventh- and tenth-year partners, respectively, and awarded **hourly rates of $400 and $300**. *Id.* at *18. The Court of Appeals ultimately reversed the trial court's order on different grounds and awarded a much lower fee overall award then requested but applied the lowest requested rate of $495/hour in its calculation.

- *Richardson Investments. v. Hajj*, No. E078098 (Cal. Ct. App. Aug. 4, 2023). In *Richardson Investments*, the trial court (Hon. Kira L. Klatchko) determined that **$375 per hour** was reasonable for a small firm attorney with twenty-nine years' experience in a real estate dispute. *Id.* at *29. The Court of Appeals affirmed the trial court's order.

## Recommended Hourly Rates

93.    ***Dan Stormer***. Mr. Stormer was admitted to the California State Bar in 1974. He claims a billable rate of $1,550/hour ($1,860/hour with multiplier). Even without a multiplier, Mr. Stormer's requested rate of $1,550/hour is around *three times higher* than the range of reasonable rates for partner-level litigators in the Riverside legal market.

94.    Mr. Stormer's rate is high for Los Angeles too: Last year, the Honorable Gail Killefer of the Los Angeles Superior Court noted that "***Mr. Stormer's hourly fee request of $1,500.00 is the highest this court has seen.***" *Jung v. Acosta*, LASC

---

[10] True and correct copies of the opinions referenced in this paragraph are attached hereto as **Exhibit N**.

DECLARATION OF GRANT STIEFEL

Case No. 24STCV11609 ("*Jung*"), Order on Plaintiff's Motion for Attorneys' Fees, October 8, 2024.[11]

95.     My recommended rate for Mr. Stormer's work on this litigation is $1,000 per hour. While this is not the highest hourly rate that Mr. Stormer has ever been awarded, it is *much* higher than partner rates that are typically awarded for work in the Riverside legal market. I have determined a reasonable hourly rate for Plaintiff's other lawyers using Mr. Stormer's recommended rate as a benchmark:

- *Melinda Bird*. Melinda Bird was admitted to the California State Bar in 1982. My recommended rate for Ms. Bird is $850 per hour.

- *Claudia Center*. Claudia Center was admitted to the California State Bar in 1992. My recommended rate for Ms. Center is $725 per hour.

- *Maronel Barojas* and *Anna Rivera*. Maronel Marojas was admitted to the California State Bar in 2006, and Ms. Rivera was admitted in 2005. I recommend a rate of $650 per hour for both attorneys.

- *Munmeeth Soni*. Munmeeth Soni was admitted to the California State Bar in 2008. I recommend a rate of $600 per hour for Ms. Soni.

- *Shaleen Shanbhag* and *Brian Olney*. Ms. Shanbhag was admitted to the California State Bar in 2014, and Mr. Olney was admitted in 2013. I recommend a rate of $575/hour for these lawyers.

- *David Washington*. David Washington was admitted to the California State Bar in 2015. My recommended rate for Mr. Washington is $525 per hour. This is the same rate he was awarded last year in Los Angeles Superior Court in the *Jung* case. [October 8, 2024, Order on Motion for Attorneys' Fees]. Mr. Washington had sought a rate of $700/hour in *Jung*.

---

[11] A copy of that order is attached as **Exhibit O**.

DECLARATION OF GRANT STIEFEL

- *Malhar Shah*. Malhar Shah was admitted to the California State Bar in 2017. My recommended rate for Mr. Shah is <u>$500 per hour</u>.

- *Lindsay Appell* was admitted to the California State Bar in 2020. I recommend a rate of <u>$425 per hour</u> for Ms. Appell.

- *Francesca Simon*. Although Ms. Simon graduated law school in 2023, she was not admitted to the California State Bar until December 2024. Ms. Simon billed all her time in 2023, before she was admitted to practice law, so she should not be compensated at an attorney rate. I have therefore used a law clerk rate of <u>$150 per hour</u> for her work on this matter.

- *Stephen Peters, Leah Kang*, and *Robert Borrelle*. I have not recommended any adjustment to the hourly rates sought by Mr. Peters (<u>$495</u>), Ms. Kang (<u>$585</u>), and Mr. Borrelle (<u>$560</u>).

- *Tami Galindo* and *Norma Molina*. I recommend a rate of $250/hour for Ms. Galindo and Ms. Molina. This is a generous paralegal rate for Riverside but is in line with the rate Ms. Galindo was awarded last year in the Los Angeles Superior Court in *Jung*.

- *Beverly Familar, Mayeli Soto,* and *Francisco Rincon.* I have not recommended any adjustment to the hourly rates sought by these timekeepers.

96.    To be clear, I have no criticism of counsel's work or the outcome they achieved for their client. My analysis assumes they are highly skilled attorneys, as reflected in my recommended rates. While lower than the rates requested by counsel, these rates are considered high for Riverside and around the median for Los Angeles. Moreover, they are significantly higher than the rates I have previously recommended in this jurisdiction, even for plaintiff's attorneys who have retained me as a testifying expert in fee disputes.

DECLARATION OF GRANT STIEFEL

97.     The Court may, of course, choose to apply higher or lower hourly rates in its final determination of a reasonable fee award. However, I believe my recommended rates accurately reflect the local legal market and appropriately account for counsel's experience and qualifications, which are not in dispute.

98.     In addition to the cases referenced hereinabove, my testimony regarding reasonable hourly rates has been cited and approved by dozens of courts in California. *See, e.g., Jang v. County of Los Angeles*, Los Angeles County Superior Court Case No. BC587400, January 2, 2025 Order on Motion for Attorneys' Fees ("***the Court… finds the rates set forth by Mr. Stiefel to be reasonable***"); *Passport 420, LLC v. Starr Indemnity & Liability Co.*, Santa Barbara Superior Court Case No. 19CV03596, Order on Motion for Attorneys' Fees (trial court approved and adopted Stiefel's recommended rates); *Association of Independent Judicial Interpreters of California v. Sup. Ct. (Orange County)*, Orange County Superior Court Case No. 30-2018-01024591-CU-JR-CJC, August 11, 2020 Order on Motion for Attorney's Fees (trial court "***relied on a declaration from Stiefel***" in rejecting counsel's above-market rates and awarded a "***reasonable rate… as reflected by the 2018 Real Rate Report***" as recommended by Declarant); *Vides v. ABM Janitorial Services, Inc.*, Los Angeles Superior Court Case No. BC487930, March 25, 2016 Order on Plaintiff's Motion for Statutory Attorney Fees ("***the court agrees with Defendant's expert Mr. Stiefel*** [and] ***the court finds Mr. Stiefel's declaration persuasive as to the rates charged by comparable attorneys in Los Angeles***"); *Smith v. Related Management Co., L.P.*, Los Angeles County Superior Court Case No. 20STCV10686, October 31, 2022 Ruling on Plaintiffs' Motion for Attorneys' Fees (adopting Stiefel's recommended rates); *Nava vs. Related Management Company, L.P.*, Orange County Superior Court Case No. 30-2019-01096579-CU-BT-CJC, May 9, 2022 Minute Order (adopting Stiefel's recommended rates); *Melendez v. Los Angeles Unified School District*, Los Angeles Superior Court Case No. BC635349 (same); *Elmy v. Related Management Co.*, Orange County Superior Court Case No. 30-2019-01105181-CU-BT-CJC, April 4,

DECLARATION OF GRANT STIEFEL

2022, Minute Order (same); *International Corporation v. Prestige Brands Holdings, Inc.*, Case No. CV 18-6809-MWF (MRWx), August 2, 2024 Minute Order on Motion for Attorneys' Fees (same); *Riskin v. Larchmont Village Property Owners Ass'n.*, Los Angeles Superior Court Case No. BS172934, November 21, 2019 Order on Motion for Attorneys' Fees (adopting Stiefel's proposed hourly rates based on Real Rate Report data); *Urban Pacific Construction, Inc. v. Samax Development, LLC*, Los Angeles Superior Court Case No. EC051593, July 15, 2014 Order Granting Motion to Declare Prevailing Parties and to Award Attorneys' Fees (same); *Friends of the Hastain Trail v. Coldwater Development LLC*, Los Angeles Superior Court Case No. BC469573 (August 30, 2013 Order on Motion for Attorneys' Fees) (same).

99.     My hourly rate analysis and recommendations have also been cited, approved, and adopted by arbitrators and administrative law judges. *See, e.g., Ancheta v. Verizon Wireless*, JAMS Arbitration Case No. 1110016197 (September 29, 2015 Final Arbitration Award) (adopting Stiefel's recommended hourly rates in TCPA litigation); *Formosa v. King's Seafood Co., Inc.*, AAA Case No. 01-21-0004-4381 (March 17, 2022 Memorandum and Order on Motion for Attorneys' Fees and Costs) (adopting Stiefel's recommended hourly rates in PAGA litigation); *Thomas v. Security Industry Specialists, Inc.*, July 13, 2023 Final Award of Arbitrator, AAA Case No. 01-21-0004-0957 (same).

## PROPOSED FEE MODEL

100.   To assist the Court in calculating a reasonable discount on Plaintiff's fee motion, I have prepared a proposed fee model, attached as **Exhibit P**, that uses the foregoing recommended rates. This fee model shows all 6,894 line-item billing entries and includes the following proposed deductions to counsel's lodestar hours:

- A 20% discount for block billing. [Paragraphs 38-49, *supra*].
- A 100% deduction for non-compensable office overhead, clerical, and secretarial work [Paragraphs 50-54, *supra*].
- A 100% deduction to vague and cryptic billing entries.

41

[Paragraphs 55-62, *supra*].

- A 50% deduction for excessive internal conferencing. [Paragraphs 63-74, *supra*].

- A 75% deduction for excessive time spent preparing for the hearing on Plaintiff's motion for partial summary judgment. [Paragraphs 75-78, *supra*].

101. For each entry on Exhibit P, from left-to-right, the proposed fee model shows: (1) the date; (2) the timekeeper name; (3) the description of work performed; (4) the original hours billed; (5) the adjusted hours (with an appropriate discount applied); (6) counsel's claimed hourly rate; (7) the adjusted hourly rate (as set forth in Paragraphs 78-99, *supra*); (8) the original fee subtotal; and (9) the adjusted fee subtotal (i.e., adjusted hours times adjusted rate).

102. After applying the foregoing deductions and using reasonable market rates, the maximum recommended lodestar is **$2,882,848** (reflecting 5,184 hours of compensable work).

103. The foregoing analysis and calculations are not intended to reflect the exclusive grounds for deductions from Plaintiff's fee request, and I have not been asked to proffer an opinion as to whether Plaintiff is entitled to recover some or all his claimed attorneys' fees as a matter of law.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration is executed on March 7, 2025, at Denver, Colorado.

_____
Grant D. Stiefel, Declarant

DECLARATION OF GRANT STIEFEL